No. 3180

Second Circuit

———

PERRY v. J. M. LEWIS & CO. ET AL.

———

(July 5, 1930. Opinion and Decree.)

— —

A. S. Drew, of Minden, attorney for plaintiff, appellee.

McInnis & Campbell, of Minden, attorneys for defendants, appellants.

ODOM, J. The plaintiff entered into a contract with the Louisiana Highway Commission to build a public road in Webster parish known as "State Highway Project 411-C," and sublet a portion of the work to Tyson & Tullos. In the months of September and October, 1925, J. M. Lewis & Co., sold to the subcontractors, Tyson & Tullos, certain goods, wares, and merchandise amounting to $530.95, and in the months of August, September, and October of that year, C. C. Lewis, owner and proprietor of the Cash Feed Store, sold to said subcontractors feed for mules which they used in building the road, the bill amounting to $927.95. The subcontractors failed or defaulted in November, 1925,

and the work which they had undertaken was taken over by the principal contractor, W. C. Perry. The subcontractors failed to pay the above-named accounts, and on November 5, 1926, these claimants filed and recorded sworn itemized statements of the amounts due them in the office of the recorder of mortgages for Webster parish, the parish in which the work was done.

When the work on the highway project was finally completed by Perry, the principal contractor, the highway commission refused to pay him the balance due on the contract price, but withheld, it seems, an amount sufficient to satisfy the above-named claims. Perry, the principal contractor, then brought the present suit or rule against the claimants, J. M. Lewis & Co. and the Cash Feed Store, C. C. Lewis, owner, to show cause why the claims or so-called liens filed by them and recorded should not be canceled and erased from the records of the parish, alleging that said liens are null, void, and of no force and effect for the following reasons:

1. That the claims were not sworn to and filed by the claimants in person;

2. That the goods and merchandise sold by J. M. Lewis & Co. are not such as give rise to a claim as contemplated under the law;

3. That under the law, those who furnish supplies to subcontractors on public works are not entitled to a lien or claim against the unpaid balance due on the contract; and

4. That these claims, if valid, were not filed within forty-five days, as provided by law.

The defendants in rule answered admitting the facts alleged, but denied that the so-called liens are null, void, and of no effect, and alleged that under the law and the facts their claims are valid and should not be erased. The lower court rendered judgment ordering the registry of the claims canceled, and defendant C. C. Lewis, proprietor of the Cash Feed Store, appealed.

1. Plaintiff in rule contends that the claims filed are not valid and are of no force and effect because they were not sworn to and filed by the claimants in person. The facts are that the claimants put into the hands of their attorney, J. F. McInnis, itemized statements of their accounts and he made an affidavit setting out substantially that he was the agent and attorney for the claimants and that the account to which the affidavit is attached is true and correct; that the affidavit and itemized accounts are filed on behalf of the claimants to operate as a lien and privilege on State Highway Project 411-C, under contract to W. C. Perry.

The testimony given by the claimants and by Mr. McInnis shows that Mr. McInnis acted as agent for the claimants and was authorized to make affidavit and file and record the claims. It is admitted that the accounts as filed and recorded are correct. That being true, we see no reason why the sworn statements of the amounts due the claimants, as filed and recorded, should not subserve the purpose intended; that is, to give notice to the highway commission, the authority letting the contract, that the amounts claimed were due the claimants. The highway acts require that claimants shall file sworn statements of the amounts due them, "and any payments made thereafter by said authority (the authority letting the con-

tract) without deducting the amount of the claims so served on it" shall be at its own risk. Act No. 224 of 1918, sec. 2; Act No. 203 of 1924, sec. 1; Act No. 271 of 1926, sec. 3, amending Act No. 224 of 1918, sec. 2.

This is not a contest between the claimants and the highway commission, which seems to have recognized that notice served on it and the filing and recording of the claims were valid and binding. If any controversy had arisen between the parties as to whether the accounts filed by these claimants were correct as to the items or amounts claimed, it might be reasonably contended that an agent of the claimants did not possess sufficient information to enable him to verify the accounts. But no contention is made that the accounts are not correct; in fact, the record discloses an admission by counsel for plaintiff in rule that the accounts are correct. Under the circumstances, we think the contention that these claims are invalid because they were not sworn to and filed by the claimants in person, but by their agent, is without merit.

2. The contention that the claim of J. M. Lewis & Co. cannot be recognized under the law is well founded. Lewis & Co. sold to the subcontractors dry goods, groceries, axes, a wheelbarrow, and some harness. Such claims are not recognized by the law relating to highway contracts. See State vs. Smith, 167 La. 301, 119 So. 56.

3. It is contended that those who furnish material, supplies, etc., to subcontractors on public works have no rights against the unexpended funds in the hands of the authorities letting the contracts. In support of this contention, counsel calls attention to the fact that Act No. 139 of 1922, in force at the time these claims arose, makes no mention of supplies furnished to subcontractors, and that under the ruling in the case of Ketteringham vs. Eureka Homestead Society, 140 La. 176, 72 So. 916, claims for material or supplies furnished subcontractors cannot be recognized under an act which does not specifically mention them. In the Ketteringham case, supra, the court had under consideration a claim which arose under Act No. 221 of 1914, which makes no mention of claims against subcontractors. Counsel points out that in 1916, the Legislature passed a similar act, Act No. 262, in which claims against subcontractors were included, and says this later act corrected the error or omission in the act of 1914. But in Act No. 139 of 1922 on the same subject-matter, reference to claims against subcontractors is again omitted, and it is contended that the holding in the Ketteringham case is applicable here. The lower court took this view and held for plaintiff.

The error into which the court and counsel have fallen is in assuming that any of the above-mentioned acts apply to the issues involved in the case at bar. Counsel in his brief refers to the above acts as "Highway Acts." But they are not such in fact. The acts of the Legislature regulating contracts for public works, such as public roads, are Act No. 224 of 1918, Act No. 203 of 1924, and Act No. 271 of 1926. Each of these acts refers to claims against subcontractors. Act No. 203 of 1924 provides that any person, corporation, etc., to whom money shall be due "on account of having supplied and furnished feed for use and consumption by mules or other live stock used and employed by any contractor or subcontractor in the construction * * * of any public roads or public works of any character, * * * may file with the authority having the work

done and record in the Office of the Recorder of Mortgages * * * a sworn statement of the amount due him, and any payments made thereafter by said authority without deducting the amount of the claim so served on it shall be at its own risk." Section 1.

The claim of C. C. Lewis is for feed consumed by mules and live stock used in building the road. A sworn statement of the amount due him was filed and recorded as this act provides.

4. Lastly, it is contended that the claim was not filed and recorded in time. The act provides that the statement shall be filed "within forty-five days after the acceptance of said work by the State, Parish, City, Town, Village, Public Board or Body, or within forty-five days after the default of the contractor or subcontractor, * * * provided that the said forty-five days shall not begin to run until the said authorities shall record in the mortgage office (of the parish) in which the work was done an acceptance of the work or notice of the default of the contractor, as the case may be." Act No. 203 of 1924, sec. 2.

The state highway commission was the authority having this work done. It is not alleged, nor is there any evidence to show, that the highway commission ever recorded in the recorder's office of Webster parish notice of its acceptance of the work. Plaintiff in rule alleged that he was the contractor, that his work had been completed and accepted, but he does not state when. It is evident, however, that the work was completed and accepted long after the claimants had filed and recorded their sworn statements.

The basis of plaintiff's contention that the claims were not filed in time is that

on March 5, 1926, W. C. Perry, the principal contractor, made and recorded an affidavit, reading as follows:

"State of Louisiana
"Parish of Webster:
"Before me the undersigned authority personally appeared W. C. Perry, who on oath states that Tyson and Tullos were subcontractors under him on State Project 411-C and on or about November 20th, 1925, said subcontractors defaulted and left their work on said project and have had no connection with same since and that their said work was accepted as of date November 20th, 1925, and that their relations with affiant ceased on that date.
"W. C. Perry.
"Sworn to and subscribed before me at Minden, Louisiana, this 5th day of March, 1926.        W. C. McKinney,
"Deputy Clerk District Court."

This was more than forty-five days—eight months, to be exact—before the claimants filed and recorded their claims. Counsel argues that the forty-five days began to run from the date this affidavit was filed and recorded by Perry, the principal contractor. We do not think so. The delay for filing claims begins to run only from the date on which the authority having the work done files notice of its acceptance of the work or notice of the default of the contractor. The work done by these subcontractors was done for Perry, the principal contractor. It was his work. He could not accept his own work for the highway commission so as to cut claimants off from asserting their rights against the unpaid balance in the hands of the commission due him on the contract. His acceptance of the work of his subcontractors was not an acceptance of the work as contemplated by the statute as relates to the time for filing claims.

It is conceded, as we have said, that J. M. Lewis & Co. had no valid claim against the work. The lower court held

that C. C. Lewis, owner of the Cash Feed Store, had no valid claim and ordered the statement thereof canceled and erased from the record. That judgment is erroneous.

It is ordered, adjudged, and decreed that the judgment appealed from ordering the inscription of the claim of the Cash Feed Store, C. C. Lewis, owner, canceled and erased from the records, be and the same is hereby reversed, and that the demands of plaintiff in rule be rejected and his suit dismissed at his cost in both courts.

DREW, J., recused.