WILLIAMS, Judge.
This case involves a dispute over a real estate listing commission. The trial court held that plaintiff Latter & Blum, Inc. was entitled to a commission plus 25% attorney fees and all costs from defendant Brandon Nodier. The trial court also held that defendant was entitled to indemnification from third party defendants, Thomas T. Cloke and David S. Cressy.
Brandon Nodier received the property on 719 Esplanade Avenue in'New Orleans as an inheritance in 1976 after his parents’ death. He bought out his relatives’ portions and obtained full ownership of the property in 1979. At some point, Thomas *856 T. Cloke, a real estate agent, moved next door to the Nodier property. Cloke approached Nodier about purchasing the property and made several offers, all of which Nodier refused.
Nodier agreed to allow Robyn Halvorsen, a friend of many years who was a real estate agent for Latter & Blum, to list his house for sale for $200,000.00. The listing contract provided, “Owner agrees to refer all prospects for the sale of said property to Agent and Agent shall conduct all negotiations for the sale of said property.” A commission of 6% on the first $100,000.00 and 4% on the balance of the property was stipulated. The contract continued, “Owner further agrees to pay Agent the above stipulated commission on any sale of said property negotiated within three (3) months after the expiration or termination of this contract to any party to whom said property was submitted by Agent ... during the period of this contract.” The contract provided that Owner would pay attorney fees incurred for the collection of the commission at 25% of the amount thereof plus court costs and other costs and expenses incurred. Nodier signed the three month listing agreement on March 29, 1980.
On April 24, 1980, Thomas Cloke made an offer to purchase the house for $85,-000.00. Halvorsen showed the offer to No-dier, who rejected it as too low. Exhibit P-2 shows an offer to purchase made by Cloke, signed “rejected as per authority 4-30 Robyn Halvorsen.” Between June 11, 1980 and October 12, 1980, six other offers to purchase Nodier’s property were made to Latter & Blum, all of which Nodier also rejected.
Nodier signed a document reducing the asking price of the property to $175,000.00 on May 6, 1980.
The listing agreement expired on June 29, 1980. On July 10, 1980, Halvorsen had Nodier sign a document reading, “This is your authority to extend your listing from (blank) to 8/10/80 on my property at above address for $175,000.00. All other terms of said listing agreement to remain in full force and effect.” On September 22, 1980, Nodier signed an identical form, this time “to extend your listing from (blank) to 10/22/80.”
On December 3, 1980, Nodier accepted Thomas Cloke’s offer to purchase the property for $145,000.00. Nodier was given $7,500.00 in cash and a promissory note, signed by Cressy and Cloke, for $71,-600.00 [1].
Latter & Blum, plaintiff in the main demand, filed suit on June 25, 1981, claiming a commission as provided for in the listing agreement for the December 3, 1980 sale of Nodier’s property. Plaintiff prayed for $7,800.00 plus 25% attorney fees and all costs and expenses. Defendant denied that the contract had ever been completed, arguing that his intention to list the property was not a serious one, but just “a favor” granted his longtime friend, Halvorsen. Defendant admitted that he was shown an offer of $85,000.00 from Cloke, and that he rejected that offer, but defendant would not verify Exhibit P-2 as that offer. Instead, he repeatedly asserted that he had written with his own hand across the instrument right where the writing by Hal-vorsen was on Exhibit P-2. Defendant also refuted the validity of the extension agreements, asserting that even if the original listing agreement had been valid, it had long expired and the alleged extensions were without effect. Alternatively, defendant brought a third party claim against the purchasers of his property, Cressy and Cloke. He claimed that Cressy, an attorney, had examined the listing agreement and extensions and had assured Nodier that they were invalid and that he did not owe Latter & Blum any commission. He further testified that Cressy had promised to provide legal assistance and Cloke, financial assistance, were any problems to *857 develop with Latter & Blum, over the commission. Nodier testified that Cloke and Cressy told him that the $7,500.00 cash he was receiving was the sum that would have gone to Halvorsen as commission, but that they were giving it to Nodier instead.
Halvorsen testified that at no time did she doubt the seriousness of Nodier’s intention to list the property and that she would not have wasted her time on the property if she had not perceived the listing as serious. She further testified on cross examination that she could not recall whether the listing agreement gave her authority to reject an offer in the name of the seller, but that it was “a very common practice” and she was “sure that ninety-five percent of all agents in New Orleans do that.” She explained that she wanted to get the response back to Cloke quickly because of the impending expiration date on the contract.
Neither Cloke nor Cressy, both of whom were present in the courtroom, chose to testify on their behalf.
The trial court rendered judgment in favor of plaintiff, granting him $3,900.00 as a half share of the commission, plus attorney fees, costs and expenses.[2] The court also rendered judgment in favor of defendant third-party plaintiff, ordering third-party defendants to fully indemnify him for the judgment due plaintiff in the main demand.
On appeal, third-party defendants assert that the trial court erred in: (1) holding the listing agreement was a valid contract; (2) not considering that the words of the contract indicated it had expired; (3) not considering the extension agreements invalid; (4) maintaining Latter & Blum was the procuring cause of the sale; (5) holding that the April 29, 1980 Cloke offer was ever transmitted to Nodier; (6) holding that there was a promise to indemnify Nodier against any claim of Latter & Blum; and (7) allowing third-party defendants’ failure to testify to create a presumption of detrimental testimony in light of the lack of evidence presented in the case.
Appellants argue in their appeal brief that the original listing was invalid because Nodier, who had only one-half year of high school education, had not known what he was signing and, as he testified, lacked the serious intent required for a valid contract.
Halvorsen testified that she took Nodier seriously when he signed the initial listing agreement on March 29, 1980. Approximately five weeks later Nodier signed a document reducing the property’s asking price $25,000.00 to $175,000.00. Nodier considered and rejected six offers presented to him by Halvorsen over a six month period during which he signed two extension agreements. The trial court apparently concluded that this was neither the behavior of a man acting in jest, nor that of a man too ignorant to understand what he was doing. We must agree.
Appellants point out that regardless of the validity of the initial agreement, it contained an expiration date of June 29, 1980. They contend that the alleged extension agreements were so vague they could not contain an expression of the parties’ intent sufficient to perfect a contract. Appellants assert that even assuming arguen-do that the extensions were valid agreements, they did not extend the original agreement’s life because they had already expired and had become a nonentity. The extensions were distinct and independent listing contracts. Appellants conclude, therefore, that only the initial listing agreement, the agreement in effect when Hal-vorsen received the Cloke offer, can be considered in determining whether a commission is due. Since the sale of the Nodier property was effected December 3, 1980, over 30 days after the June 29, 1980 expiration date of the initial listing agreement, appellants argue that no commission was due.
*858 The listing agreement Nodier signed stated that all terms from the original listing agreement were to continue in full force and effect. The extension was an incorporation of the terms of the first agreement rather than a new, distinct contract. Halvorsen continued to solicit offers in reliance upon the extension and Nodier continued to consider those offers. It is clear from Nodier’s testimony that he believed himself to be under the commission obligation during final negotiations with Cloke and Cressy and that he was very concerned about receiving adequate financial and legal protection from the realtor’s claim.
The hiatus between the original contract’s expiration and the drawing up of the extension contract cannot be used to avoid giving legal effect to Nodier’s and his realtor’s intent so as to benefit appellants. Legal agreements have the effect of law upon the parties and none but the parties can abrogate or modify them. Courts are bound to give legal effect to all such contracts according to the true intent of the parties. La.Civ.Code art. 1945; Louisiana Nat’l Listing Corp. v. A.D.F. Serv., Inc., 377 So.2d 92 (La.1979).
The extension agreements were drawn up between Nodier and Halvorsen of Latter & Blum because they intended them to be valid. The expiration date of the final extension was October 22, 1980. That contract adopted the terms of the original contract, promising the agent the commission “on any sale of said property negotiated within three (3) months after the expiration or termination of this contract to any party to whom said property was submitted by agent ... during the period of this contract” (emphasis added). Appellants’ injection of the theory of procuring cause is unnecessary. A simple reading of the words of the contract demonstrates that the commission was due. There was a sale of the property. The sale occurred within three months of October 22, 1980. The sale was to a party, Cloke, from whom Halvorsen received an offer during the months that the listing agreement was in effect. Appellants argue that the April 29 Cloke offer had never been submitted by Halvorsen to Nodier, but Nodier himself admitted in testimony that he had received and rejected the offer. The trial court apparently concluded Nodier had received the offer and did not consider Nodier’s uncertainty about the exhibit presented as the offer to be significant. We cannot disagree.
Appellants assert that the trial court erred in holding that a promise had been made to indemnify Nodier against any claim by Latter & Blum. Nodier’s one-half year of high school education contrasted sharply with the knowledge of the attorney and real estate agent with whom he negotiated the sale of his property. Plaintiff’s testimony demonstrated his ignorance and his reliance on the greater knowledge of appellants and on the promises they made to him.
The existence of the promise to indemnify Nodier was a factual issue decided by the trial court in plaintiff’s favor. The resolution of such a question of fact lies particularly within the realm of the trial judge, who has the opportunity to evaluate the credibility of the witnesses and the weight of the evidence. The appellate court cannot disturb the trial judge’s factual determinations unless a finding of manifest error is reached. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Co., 283 So.2d 716 (La.1973). We can make no such finding here.
Finally, appellants assert that the trial court erred in allowing their failure to testify to create a presumption of detrimental testimony in light of the lack of evidence presented in the case. The trial judge weighed the circumstances and evidence presented in the case to reach its finding of fact. There is no indication that the judge relied upon such a presumption in order to reach his judgment. This assignment of error is based on mere speculation and is therefore dismissed.
*859 For the foregoing reasons, the judgment of the trial court is AFFIRMED.
AFFIRMED.
REDMANN, C.J., dissenting.

. Because he was unable to collect on the note, Nodier brought suit against Cressy and Cloke, which resulted in a judgment in his favor and against Cressy and Cloke for $67,736.00, $6,926.00 interest, and $3,000.00 attorney fees, rendered September 23, 1982. This judgment has not been appealed.

. Latter & Blum was entitled to only one-half of the commission, the other one-half belonging to Thomas T. Cloke, Inc.