533 So.2d 1064 (1988)
W.J. DAIGLE, d/b/a Commercial Renovations
v.
DONALD M. CLEMENT CONTRACTOR, INC., et al.
No. CA 8484.
Court of Appeal of Louisiana, Fourth Circuit.
October 27, 1988.
Writ Denied January 13, 1989.
*1065 Steven M. Lozes, Lozes, Cooper & Cambre, New Orleans, for plaintiffs.
David J. Mitchell, Dan Richard Dorsey, Porteous, Hainkel, Johnson & Sarpy, New Orleans, for defendants.
Before GULOTTA, C.J., and SCHOTT and ARMSTRONG, JJ.
ARMSTRONG, Judge.
Defendants, Donald M. Clement Contractor, Inc., Travelers Insurance Company and Commercial Union Insurance Company appeal the trial court's judgment in favor of plaintiff, W.J. Daigle, d/b/a Commercial Renovations, for the amount of $10,200 plus ten percent attorney fees, together with legal interest and costs.
This lawsuit arises out of two separate construction contracts between defendants Donald M. Clement Contractors, Inc. ("Clement"), and the Parish of St. Bernard involving the construction of certain projects known as "Val Reiss Park, Phase II" and "Val Reiss Park, Phase III" in Chalmette, Louisiana. The Phase II improvements were bonded by a performance and payment bond issued by Travelers Insurance Company ("Travelers"), which also bonded Phase III of the project. Clement subcontracted the construction of certain items including two dugouts and two gates to Peter Aizenman, president of Competent Contractors, Inc. ("Aizenman"). The subcontract was in writing and contained a provision that Aizenman would furnish all labor, material, equipment and supervision to construct these items. The sum agreed upon for the gates was $5,900.00 and for the dugouts was $8,200.00.
Subsequently, Aizenman contacted plaintiff, W. Joseph Daigle, d/b/a Commercial Renovators ("Daigle"), and subcontracted the construction of the dugouts and construction of the two gates for the prices that Clement had agreed to pay him. This contract was oral and no mention was made of the provision requiring Aizenman to purchase materials. Pursuant to this oral contract with Aizenman, Daigle built the dugouts and the two gates. The terms of this agreement were subsequently memorialized in writing.
Daigle claims that Clement contacted him directly at a later date about building a third gate. Daigle initially refused because he had only been paid $5,900.00 by Aizenman for the two gates, but nothing for the two dugouts. Clement then offered to pay $4,000.00 for the gate with a $2,000.00 advance and Daigle agreed. Clement issued a check for $2,000.00 in partial payment of the gate, leaving a balance of $2,000.00.
Upon completing the work in January of 1983, Daigle personally delivered his outstanding invoice to Clement for $10,200 *1066 which included the dugouts for $8,200.00 and the gate for $2,000.00. When payment was not forthcoming Daigle obtained a certificate of substantial completion for the Phase III improvements and filed liens, which were bonded. On January 5, 1984 Daigle filed suit against Clement, Travelers, (issuer of the performace and payment bond) and Commercial Union Insurance Company, (issuer of lien bonds) seeking relief pursuant to the Public Works Act, La.R.S. 38:2241. The Parish of St. Bernard and the individual police jurors were named as parties but were dismissed on an exception of no cause of action. Judgment was entered for Daigle in the amount of $10,200.00, his total claim, plus ten percent attorney fees and interest. No written reasons for judgment were given. Clement filed a motion for new trial which was denied and this appeal was taken.
By his first assignment of error, Clement argues that the trial court erred in failing to dismiss Daigle's suit for noncompliance with the Public Works Act, specifically La.R.S. 38:2247. La.R.S. 38:2247 requires that a claimant notify the contractor of his claim by certified mail within 45 days from the recordation of the notice of acceptance by the owner of the work. Clement claims that Daigle did this prematurely in the case of the gate constructed under the Phase III contract and that notice was received in excess of 45 days in regard to the dugouts constructed under the Phase II contract. By his own testimony, Clement explained that all of the work Daigle performed was under the Phase II contract. Clement relies on Powers Regulator Co. v. Murphy's Plumbing Service, Inc., 311 So. 2d 503 (La.App. 4th Cir.1975) to argue that in failing to meet the notice requirements of the statute Daigle's suit should be dismissed.
Powers involved a case where the notice that the claimant sent by certified mail was not delivered. The Post Office notified the claimant of the non-delivery, and the claimant took no further timely action to accomplish delivery even though sufficient time remained available. Powers is distinguishable from the case before us because Daigle filed a lien with the mortgage office at the time when the statute allowed recordation of the lien to serve as notice.[1]
Daigle also complied with section 2247 by mailing a certified letter containing the lien affidavits and the invoice on March 1, 1983. Furthermore, Daigle proved that he personally delivered a written invoice to Clement on January 27, 1983. The fact that Clement maintains he did not receive the certified letter until August does not circumvent the fact that he had notice of the lien well within the 45 day limit assigned by the statute.
By his second assignment of error Clement maintains that Daigle failed to prove that there was a subcontract between Aizenman and himself. However, it is not necessary for Daigle to be a subcontractor in order to proceed as a claimant against Clement under the Public Works Act. La.R.S. 38:2247 governs the claims of subcontractors as well as materialmen and laborers. Honeywell, Inc. v. Jimmie B. Guinn, Inc., 462 So.2d 145 (La.1985); see also Harvey Canal Towing Co., Inc. v. Gulf South Dredging Co., Inc. 345 So.2d 567 (La.App. 4th Cir.1977).
Clement insists that Daigle is actually Aizenman's partner and thus knowledge of the terms of the contract between Aizenman and Clement should be attributed to Daigle. However, this court is satisfied from our review of the law and the facts that Daigle qualifies as a subcontractor. Thurman v. Star Electric Supply Inc., 307 So.2d 283 (La.1975). The Thurman decision notes that a subcontractor is a person who provides labor in attaching or incorporating materials into the building or on-site improvements. By his own testimony, Clement admitted that he contacted Daigle at a telephone number separate from that of Aizenman, and that *1067 Daigle's telephone was regularly answered under the name of Commercial Renovations, a separate entity from Competent Contractors, Inc. As a subcontractor Daigle can not be held to the terms of the Clement-Aizenmen contract. That agreement is only enforceable as between the parties. A basic rule of contract construction under Louisiana law is that a contract represents the law between the parties. Latter and Blum, Inc. v. Nodier, 442 So. 2d 854 (La.App. 4th Cir 1983). Clement's confusion as to the relationship between Aizenman and Daigle does not serve as a valid defense under the Public Works law. The Thurman decision specifically holds that a subcontractor who provides labor and materials to another subcontractor is protected by the Public Works Act. Clement's remedy in this instance is to seek recovery of the amounts paid to Aizenmen which should have been paid to Daigle.
By his third assignment of error Clement argues that the trial court erred in failing to give him credit for payments made, equipment furnished and materials supplied to Daigle. Clement's argument rests on two contentions 1) that Daigle failed to comply with the terms of the contract between himself and Aizenman and 2) defective workmanship. Neither of these contentions have any merit.
Clement testified that he and Aizenmen have worked together over a long period of time. It is customary for him to advance Aizenman money, pay for materials, share equipment and lend him workmen, but in the end he makes deductions for these advance payments from the final contract price. Daigle did not have this understanding with Aizenman and obviously Aizenman intended to mislead him because their subsequent writing does not make this relationship clear. We can assume because Clement failed to clarify otherwise but allowed Daigle to complete his work under this misconception regarding deductions, the trial court found that Clement was not entitled to fashion a new contract at this time.
As to the quality of the workmanship Clement cites at least four occasions where his workmen were called upon to correct, make repairs or to touch-up work done by Daigle. The first incident involved defective cement that Daigle was using in constructing the dugouts. When it was learned that the cement set too fast Daigle called the supplier and asked that Clement, the purchaser, be credited for the cement. New cement was ordered and Daigle borrowed some of Clement's men to break up the defective cement in order to lay down the new cement. It was proven that Daigle paid Clement's men for their labor. The only issue that arises is whether it was Clement's duty to purchase the cement to begin with. Because Daigle's contract was limited to supplying structural steel, Clement is not entitled to a deduction for the cement.
The second incident concerned damage Daigle's workmen did to the waterline during the course of their construction. Clement established that he had to rent equipment and utilize some of his workmen to effect the repairs. Clement failed to establish how much work these repairs entailed and at what cost. Nor is this court convinced that Daigle was negligent in breaking the waterline where there is some controversy as to whether the waterline was well-marked. It was not manifest error for the trial court to deny Clement to off-set the cost of these repairs. Arceneaux v. Domingue, 365 So.2d 1330 (La.1979); Canter v. Koehring Co., 283 So.2d 716 (La. 1973).
The other incidents involve the fact that Daigle used the wrong thickness for the wire mesh on the dugouts and Daigle's failure to paint the dugouts after they were constructed. It is unclear whether Daigle received specific orders as to this work. However, when Clement demanded a thicker wire mesh Daigle complied with his demands. Clement did not speak to Daigle concerning the paint job on the dugouts, he had his own workmen complete it. Obviously, Daigle followed specific orders when he received them and Clement did not show where Daigle was uncooperative or negligent in his work. In spite of Daigle's contract that he would supply structural *1068 steel, the trial court refused to credit Clement for steel purchased from Armac in the amount of $933.00. This steel was used as reinforcement in the concrete which the trial court apparently concluded was not the same as "structural steel." We find no error in this conclusion. In light of these facts we find Clement was not entitled to any deductions from the contract price and it was not manifest error for the trial court to award Daigle his entire claim. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978); Canter v. Koehring Co., 283 So.2d 716 (La.1973).
Clement's final assignment of error concerns the trial court's award of attorney's fees pursuant to La.R.S. 38:2246. The statute requires that when the full amount of the claim is recovered and when amicable demand for payment of that amount had been made upon the principal and surety without avail within 30 days of that demand, then ten percent attorney's fees is allowed on the amount recovered. Super Construction Co., Inc. v. New Orleans Levee Board., 286 So.2d 134 (La.App. 4th Cir.1973). Amicable demand was made on Clement and his sureties by mail and by hand in January of 1983 to no avail. The trial court did not err in awarding Daigle the amount of his claim plus attorney's fees.
For the reasons assigned we affirm the judgment of the trial court.
AFFIRMED.
NOTES
[1] Prior to 1985 La.R.S. 38:2247 allowed a claimant to give notice to the contractor or the surety on the bond furnished by the contractor, by recording his claim as provided in La.R.S. 38:2242 or by giving written notice to said contractor within 45 days from the recordation of notice of acceptance by the owner of the work or notice by the owner of default.