629 So.2d 1370 (1993)
"K" CONSTRUCTION, INC.
v.
BURKO CONSTRUCTION, INC., et al.
No. 93-CA-1338.
Court of Appeal of Louisiana, Fourth Circuit.
December 16, 1993.
A. Morgan Brian, Jr., New Orleans, for American Bonding Co. and Ocean Marine Indem. Co.
Thomas Lee, Harahan, for "K" Const., Inc.
Paul S. Fiasconaro, Fiasconaro & Fiasconaro, New Orleans, for S.A. Laurent, Inc.
Before BYRNES and JONES, JJ., and DIXON, J. Pro Tem.
JOHN A. DIXON, Jr., Judge Pro Tem.
The issue in this appeal is whether a subcontractor and a sub-subcontractor complied *1371 with provisions of the Louisiana Public Works Act, La.R.S. 38:2241 et seq., to enable them to sue the surety on the statutory payment bond furnished by the general contractor to the public authority and the surety on the "release" bonds filed specifically on the claims.
The Housing Authority of New Orleans (HANO) contracted with Burko Construction Co., Inc. to build a public works project, the St. Bernard Drug Prevention Playground. Burko furnished to HANO the performance and payment bond required by the Public Works Act. La.R.S. 38:2241(A). American Bonding Company was the surety on the bond. "K" Construction Co., Inc. was one of Burko's subcontractors. S.A. Laurent, Inc. and Billy J. Clark and Co., Inc.[1] were sub-subcontractors of "K" Construction.
"K" Construction did construction work and provided materials for the project at a total cost of $95,668.00. Burko paid $37,122.00 to "K" Construction, leaving an outstanding balance due of $58,546.00. When Burko did not pay the balance, "K" Construction sent certified letters of its claim to, among others, HANO and Burko at the end of June 1991. On July 18, 1991 "K" Construction filed a sworn affidavit of the outstanding balance due by Burko with the Recorder of Mortgages for Orleans Parish. On July 26, 1991 "K" Construction sent certified letters detailing its claim to American Bonding, the surety on the performance bond, and to Ocean Marine Indemnity Co., whom "K" Construction had been informed may be involved as a surety on the project.
On August 5, 1991, Ocean Marine bonded out "K" Construction's claim under provisions of La.R.S. 38:2242.2. On September 18, 1991, "K" Construction filed suit against Burko, American Bonding and Ocean Marine. Laurent, a sub-subcontractor that had not been paid by "K" Construction, intervened in the suit.
Burko was not put in default by HANO until May 1992. The notice of default was recorded in Orleans Parish on May 15, 1992. Laurent filed its "Notice of Lien" in the Orleans Parish Mortgage Office on May 21, 1992. On November 9, 1992, Ocean Marine bonded out the Laurent lien.
Trial was held on March 9 and 10, 1993 and involved, among other things, whether the claimants' work was defective. All parties filed post-trial briefs, at which time American Bonding and Ocean Marine raised the only issue they have appealed, that is, whether the claimants adhered to the requirements of the Public Works Act to enable them to sue the sureties.
The trial judge ruled in favor of "K" Construction and against American Bonding, Ocean Marine and Burko in solido for $58,546.00 plus 10% attorney fees, with legal interest and costs. Judgment was also rendered in favor of Laurent and against "K" Construction, American Bonding and Ocean Marine for $2482.30 plus 10% attorney fees and with legal interest and costs. The amount of the judgment in favor of Laurent was included in the amount of the judgment in favor of "K" Construction.
The sureties appeal, arguing that the Public Works Act requires a subcontractor claimant to comply with two formalities and a sub-subcontractor claimant to comply with three formalities before either can pursue the sureties. The sureties contend that "K" Construction and Laurent did not comply with these requirements.
The trial judge, in his reasons for judgment stated:
Relative to notice, the statute uses the word "may" and not "shall". In addition the Contractor was put in default and therefore the notice desired would have been a vain and useless gesture even before default to a contractor who obviously was no longer a viable entity. Likewise the Bonding company defendants had to bond out each and every lien. They entered into discussions and knew in advance each and every detail of their contractor's deficiencies and defaults.
For the following reasons, we affirm.
La.R.S. 38:2242 B provides:

*1372 B. Any claimant may after the maturity of his claim and within forty-five days after the recordation of acceptance of the work by the governing authority or of notice of default of the contractor or subcontractor, file a sworn statement of the amount due him with the governing authority having the work done and record it in the office of the recorder of mortgages for the parish in which the work is done.
La.R.S. 38:2247 provides:
Nothing in this Part shall be construed to deprive any claimant, as defined in this part and who has complied with the notice and recordation requirements of R.S. 38:2242(B), of his right of action on the bond furnished pursuant to this Part, provided that said action must be brought against the surety or the contractor or both within one year from the registry of acceptance of the work or of notice of default of the contractor; except that before any claimant having a direct contractual relationship with a subcontractor but no contractual relationship with the contractor shall have a right of action against the contractor or the surety on the bond furnished by the contractor, he shall in addition to the notice and recordation required in R.S. 38:2242(B) give written notice to said contractor within forty-five days from the recordation of the notice of acceptance by the owner of the work or notice by the owner of default, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor or service was done or performed. Such notice shall be served by mailing the same by registered or certified mail, postage prepaid, in an envelope addressed to the contractor at any place he maintains an office in the state of Louisiana.
"K" Construction and Laurent did not, within 45 days of notice of default of the contractor, file a sworn statement of the amount due it with HANO. Laurent, additionally, did not give written notice by certified mail to Burko within 45 days from notice by the owner of default stating the amount claimed. What appears so unusual in this case is that HANO did not put Burko in default until May 1992, long after "K" Construction had sent notices and recorded its sworn claim, although not precisely in accordance with the notice described in R.S. 38:2242 B, and even after "K" Construction had filed suit against the sureties.
The sureties' interpretation of the relevant statutes is baseless. They claim that although R.S. 38:2242 B says "may" instead of "shall", R.S. 38:2247's reference to the formalities of notice/filing and recordation as "requirements" causes the formalities to become mandatory. The sureties contend that the formalities are discretionary in R.S. 38:2242 B because that provision deals with perfecting a statutory claim against the prime contract funds in the hands of the public owner. R.S. 38:2247, they believe, is a separate provision for filing suit against the sureties in which the permissive provisions of R.S. 38:2242 B become mandatory.
The sureties also claim that the "may" in R.S. 38:2242 simply means that a claimant has the option to: 1) file and record a sworn statement to "perfect" his statutory claim, or 2) not file and record a sworn statement and not have a "perfected" statutory claim. R.S. 38:2247, the sureties assert, is what creates a cause of action against the bond and it requires a perfected claim to proceed against the bond.
The statutes do not, however, operate together as the sureties suggest. R.S. 38:2242 gives no consequence of not filing and/or recording the sworn statement. And, styled as a prescription article, R.S. 38:2247 does not actually create a cause of action on the bond. The assumption that the legislature intended to explain or limit R.S. 38:2242 in R.S. 38:2247 is not warranted. Furthermore, there is no support in caselaw or in the facts of this case for the sureties' interpretation of the Public Works Act.
In Wilkin v. Dev Con Builders, Inc., 561 So.2d 66, 70 (La.1990), the Louisiana Supreme Court discussed the purpose of the Public Works Act. The Court stated:
Because of the need to protect those performing labor and furnishing materials for public works, the Legislature in 1918 passed Act 224, the precursor to current *1373 public works statutes, La.R.S. 38:2241 et seq., granting rights to laborers and materialmen involved in public works.... The public contract law did not grant its beneficiaries a lien on the public work itself, but gave them, in effect, a "privilege against the unexpended fund in the possession of the authorities with whom the original contract ha[d] been entered into." Pigeon Thomas Iron Co. v. Drew Bros., 162 La. 836, 839, 111 So. 182, 183 (1926). Act 224 stated as its purpose the protection of "persons doing work, performing labor or furnishing material for the construction... of public buildings...." La.Legis. Acts, 1918, No. 224. (Citations omitted.)
The sureties cite Interstate School Supply Co. v. Guitreau's Const., 542 So.2d 138 (La. App. 1st Cir.1989) for their argument that R.S. 38:2247 requires compliance with the notice requirements to proceed on the bond. In Interstate, the surety filed an exception of no right of action against the sub-contractor who had filed its notice with the governing authority one day after the 45 day period. The court held that while R.S. 38:2242 gave the sub-contractor a right of action to proceed on the bond, the sub-contractor had no cause of action to proceed on the bond because of its failure to meet the delays for filing notice.
The Interstate case is distinguishable and not compelling. Interstate involved a question of timeliness; the instant case involves the sufficiency of the notice. While it is arguable that the reason for the notice provision of R.S. 38:2242 is to ensure that the governing authority and its surety are not subject to claims long after a project is completed, it is not reasonable to penalize a sub-contractor who has given timely notice sufficient to apprise the governing authority of its claim, merely omitting to provide the governing authority with a sworn statement. And, at any rate, this court is not required to follow Interstate, a case which seems to undermine the purpose of the Public Works Act, that is, the protection of persons doing work, performing labor or furnishing materials for the construction of public buildings.
Bob McGaughey Lumber v. Lemoine Co., 590 So.2d 664 (La.App. 3rd Cir.1991) and Cole's Construction Co., Inc. v. Knotts, 619 So.2d 876 (La.App. 3rd Cir.1993) both counsel a more practical interpretation of the Public Works Act, more in keeping with the purpose of the Act as described by the Louisiana Supreme Court in Wilkin, supra. In McGaughey, a sub-subcontractor sent notice of its claim to the general contractor by regular mail instead of registered or certified mail as described in R.S. 38:2247. The court held that the notice requirements of R.S. 38:2247 are satisfied upon timely receipt of written notice from the subcontractor whether by certified, registered or regular mail or by hand delivery. The court stated:
The obvious purpose of the registered or certified notice requirement of R.S. 38:2247 is to assure actual receipt of written notice of the claim and to facilitate proof thereof. In Daigle v. Donald M. Clement Contractor, 533 So.2d 1064 (La. App. 4th Cir.1988), writ denied, 536 So.2d 1216 (La.1989), the court observed that what is required is actual notice. In Daigle, supra, the subcontractor hand delivered notice to the contractor within the 45 day period. Subsequently, he mailed a certified letter to the contractor. Although the letter was mailed within the 45 day limit, it was not received until six months later. The contractor argued that notice was not proper since it was not received within the prescribed time limit. The court rejected the contractor's contention, stating that the hand delivery was sufficient.
590 So.2d at 666.
In Cole's Construction, the subcontractor erroneously listed his business as a corporation instead of a sole proprietorship on his sworn statement of claim. The court held that the affidavit sufficiently gave timely notice of the claim to the state, and the nominal error of designating the claimant as a corporation rather than a sole proprietorship was inconsequential and insufficient to render the statement of claim invalid. See also, Perry v. J.M. Lewis & Co., 14 La.App. 90, 129 So. 406, 408 (La.App. 2nd Cir.1930), where the claims were not sworn to by the claimants *1374 but by their attorneys; the court refused to invalidate the claims as to the principal contractor simply on that technical basis.
Moreover, the particular facts of this case make the sureties' arguments irrelevant. In this case, suit was filed against the sureties long before HANO recorded the notice of default for Burko, which is the event which triggers the 45 day period during which a claimant may file and record his sworn statement under R.S. 38:2242, as well as the prescriptive period of one year during which suit may be filed in accordance with R.S. 38:2247. Furthermore, "K" Construction's claim (including amounts owed to Laurent) was bonded by Ocean Marine and therefore released from and cancelled in the mortgage records in August 1991, again long before Burko was placed in default. Simply put, the Public Works Act does not appear to envision a situation where suit is filed before the notice of default is recorded. Consequently, our task is to determine if what the claimants did in this case was sufficient to notify HANO and, in Laurent's case, Burko of the claims.
"K" Construction sent a certified letter to HANO and Burko outlining its claim and then recorded a sworn statement of its claim in the mortgage records, which claim was cancelled by Ocean Marine's bond. Moreover, the party who files a bond to guarantee payment of the claim thereby having the statement of claim cancelled in the mortgage records is required, pursuant to R.S. 38:2242.2 C, to give notice to the public entity, the claimant and the contractor by certified mail of his action. Neither HANO nor Burko deny having notice of the "K" Construction or Laurent claims. In sum, it would be difficult to relieve the sureties of their obligation under their bonds given the facts of this case.
Laurent's apparent failure to notify Burko by certified letter pursuant to R.S. 38:2247 is not fatal to his claim because Laurent's claim was included in "K" Construction's claim of which Burko was notified. Laurent's sworn statement of claim filed shortly after the notice of default was included in "K" Construction's claim, bonded out as part of "K" Construction's claim, and awarded as part of "K" Construction's claim, although it was additionally and separately bonded out by Ocean Marine later. Hence, Laurent is entitled to payment of its claim from "K" Construction alone.[2] American Bonding and Ocean Marine, however, are responsible for legal interest, attorney fees and costs to Laurent.
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed to American Bonding and Ocean Marine.
AFFIRMED.
NOTES
[1] That portion of the trial court's judgment rendered in favor of Billy J. Clark and Co., Inc. was paid, so there are no issues involving Clark in this appeal.
[2] "K" Construction did not appeal the judgment.