940 So.2d 152 (2006)
MARTIN MARIETTA MATERIALS OF LOUISIANA, INC., Plaintiff-Appellant,
v.
UNITED STATES FIDELITY AND GUARANTY COMPANY, et al, Defendant-Appellee.
No. 41,280-CA.
Court of Appeal of Louisiana, Second Circuit.
September 27, 2006.
*153 McMichael, Medlin, D'Anna & Wedgeworth, L.L.C. by James C. McMichael, Jr., Shreveport, Mark S. Kavanaugh, Jr., for Appellant, Martin Marietta Materials of Louisiana, Inc.
Cheryl L. Duvieilh, Baton Rouge, for Appellee State of Louisiana DOTD.
Krebs, Farley & Pelleteri, P.L.L.C. by David Joseph Krebs, Alberta Louise Adams, Shashauna Marie Dermody, New Orleans, for Appellee United States Fidelity & Guaranty Company.
Before GASKINS, PEATROSS and DREW, JJ.
DREW, J.
In this suit against the Louisiana Department of Transportation ("DOTD") and its surety on a highway project, Martin Marietta Materials appeals a judgment granting DOTD and the surety's motions for summary judgment. We affirm.

FACTS
In 1998, DOTD entered into a contract with Neosho Construction Company, Inc. ("Neosho") to act as the contractor on a highway construction project ("project") in DeSoto Parish. USF & G executed a bond in the amount of $23,107,716.35 to secure the full and timely payment by Neosho of all claimants under the contract. Under this bond, Neosho was named as the principal and DOTD was named as the obligee. *154 Martin Marietta Materials ("Martin Marietta") provided labor and paving materials to Neosho that were used in the project. Neosho ultimately failed to pay $656,009.61 that it owed to Martin Marietta.
On August 23, 2001, Martin Marietta filed a Statement of Claim and Privilege in the mortgage records of DeSoto Parish for the amount owed by Neosho. Martin Marietta erred in identifying the contractor on this lien as Neosho Railworks instead of as Neosho Construction Company, Inc. A copy of the lien was mailed by Martin Marietta to USF & G on August 29, 2001. On August 31, 2001, Martin Marietta mailed a copy of the lien to Michael Murphy, a DOTD Project Engineer, at his field office in Mansfield, Louisiana. The letter to Murphy was stamped as received on September 11, 2001.
Neosho filed for bankruptcy in Maryland on September 20, 2001. On October 3, 2001, DOTD gave formal notice to Neosho that it was in default on the contract, and also gave notice to USF & G that as surety it was required to complete the remaining work.
On October 11, 2001, DOTD recorded notice of Neosho's default on the project in the records of DeSoto Parish. This triggered a 45-day period in which Martin Marietta was required by law to deliver a copy of the sworn statement of the amount due to the Undersecretary of DOTD in Baton Rouge. Martin Marietta failed to do this.
On October 30, 2001, Martin Marietta sent an affidavit of claim to USF & G. Although the letter sent with the affidavit referred to a claim against Neosho Construction Company, Inc., the affidavit itself stated that materials had been furnished to Neosho Railworks on the project.
In February of 2002, DOTD and USF & G executed a takeover agreement. DOTD withheld over $450,000 in earned funds from Neosho and transferred that amount to USF & G.
On February 11, 2002, USF & G notified Martin Marietta that it did not consider the notice to DOTD to be in compliance with the statutory notice requirements.
In August of 2002, Martin Marietta filed a petition for concursus and for damages against DOTD, USF & G, and various subcontractors and suppliers which had provided labor and/or materials for the project and who had claims that remained unpaid. Third-party demands were filed by DOTD and USF & G against one another.
USF & G filed a motion for summary judgment in December 2002 against Martin Marietta on the grounds that Martin Marietta failed to timely provide notice of its claim to DOTD in the manner required by law, and that Martin Marietta failed to identify Neosho by its proper name on the lien that Martin Marietta had recorded. The trial court denied USF & G's motion for summary judgment.
In April of 2005, USF & G filed a second motion for summary judgment on essentially the same grounds urged in the earlier motion. In September of 2005, DOTD filed a motion for summary judgment also seeking a dismissal of Martin Marietta's claim. The trial court granted DOTD's and USF & G's motions for summary judgment. Martin Marietta appealed.

DISCUSSION
A motion for summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show . . . that mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(B). Appellate courts review summary judgments de novo under the same criteria *155 that govern the district court's consideration of whether summary judgment is appropriate. NAB Natural Resources, L.L.C. v. Willamette Industries, Inc., 28,555 (La.App.2d Cir.8/21/96), 679 So.2d 477.
Martin Marietta raises three arguments on appeal. First, they contend that the issue surrounding notice to DOTD is one of sufficiency of notice, not timeliness of notice, and therefore, the statutory notice requirements should not be applied so as to bar its claim. Second, it argues that even if it failed to comply with the relevant statutes regarding its claim, that error only affects the concursus claim against DOTD and USF & G under La. R.S. 48:256.8. Martin Marietta maintains that it still has a viable claim against USF & G under La. R.S. 48:256.12 because the notice requirements do not apply to that statute. Third, Martin Marietta argues that the notice of default is void ab initio because it was filed in violation of the automatic stay of proceedings that occurred when Neosho filed bankruptcy.
Statutory Notice Requirements
Regarding the mechanism by which a claimant is to assert his claim, La. R.S. 48:256.5(B) states:
Any claimant shall, after the maturity of his claim and within forty-five days after the recordation of final acceptance of the work by the department or of notice of default of the contractor or subcontractor, file a copy of sworn statement of the amount due him with the department having the work done and record the original sworn statement of the amount due him in the office of the recorder of mortgages for the parish in which the work is done.
La. R.S. 48:256.5(D) sets forth DOTD's obligations once a claimant complies with paragraph (B):
(1) The department shall withhold from progress payments and the final payment one hundred twenty-five percent of the amount claimed after receipt by the undersecretary of the department at the location specified in the recorded contract of a sworn statement of amount due from a claimant to the extent of payments due and owed the contractor after receipt of said claim.
(2) When the department makes final payment to the contractor without deducting such amounts as required in this Subsection of all outstanding claims so served on it or without obtaining a bond from the contractor to cover the total amount of all outstanding claims, the department shall become liable for the amount of these claims to the extent of its failure to withhold funds as required in this Subsection.
At the time that the DOTD entered into the contract with Neosho, it was required by law that:
The recorded portion of the contract shall state that the director of management and finance is the official of the department to whom claims against the contractor or surety or both shall be made and shall state with particularity the address for delivery of claims to the department pursuant to R.S. 48:256.5.
La. R.S. 48:256.3(A)(3).[1] This provision was amended in 1999 to provide that:
The recorded portion of the contract shall state that the undersecretary is the official of the department to whom claims against the contractor or surety or both shall be made and shall state with particularity the address for delivery of claims to the department pursuant to R.S. 48:256.5.
*156 In compliance with the earlier version of this statutory provision, the contract on the project stated:
Claims against the contractor or surety or both pursuant to R.S. 48:256.5 shall be made to the Department's Director of Management and Finance and shall be delivered to Room 221 of the Department's Headquarters Administration Building, located at 1201 Capitol Access Road, Baton Rouge, Louisiana 70802.
Under the terms of its subcontract, Martin Marietta agreed to be bound by the terms of the contract between Neosho and DOTD.
John Basilica, the Undersecretary of DOTD, stated in his affidavit that he is the Director of Management and Finance for DOTD.[2] Basilica testified that DOTD withheld contract funds equal to 125% of the claims of subcontractors and suppliers on the project who provided notice of their claims to him prior to November 26, 2001. He added that he did not receive notice of any claim from Martin Marietta at the designated address for claims by November 26, 2001, and thus, DOTD did not withhold contract funds from Neosho in connection with Martin Marietta's claim.
Another relevant statute in this matter is La. R.S. 48:256.12, which reads, in part:
Nothing in this Part shall be construed to deprive any claimant, as defined in this Part and who has complied with the notice and recordation requirements of R.S. 48:256.5(B), of his right of action on the bond furnished pursuant to this Part, provided that said action must be brought against the surety or the contractor or both within one year from the registry of acceptance of the work or of notice of default of the contractor;. . . .
In general, lien statutes are stricti juris and should thus be strictly construed. Guichard Drilling Co. v. Alpine Energy Services, Inc., 94-1275 (La.7/3/95), 657 So.2d 1307. Because the Public Works Act is in derogation of common rights, it is stricti juris and liability of a surety may not be expanded beyond the Act. Jean Simpson Personnel Services v. G & G Concrete, LLC, 35,497 (La.App.2d Cir.12/5/01), 803 So.2d 992, writ denied, XXXX-XXXX (La.4/26/02), 814 So.2d 561; U.S. Pollution Control, Inc. v. National American Ins. Co., 95,153 (La.App. 3d Cir.8/30/95), 663 So.2d 119. La. R.S. 48:250, et seq., were enacted in 1997 to exclusively govern the contracts of DOTD.
Martin Marietta urges that what is at issue is sufficiency of notice, not timeliness. Yet, the failure to properly deliver the claim to DOTD in the manner required by law is not the only defect in Martin Marietta's claim. The lien filed by Martin Marietta did not properly name the contractor, so a search of the DeSoto Parish records for Neosho Construction, Inc. would not have led to the discovery of a lien in favor of Martin Marietta and against Neosho Construction, Inc. In fact, mortgage certificates obtained from the DeSoto Parish Clerk of Court in December of 2001 and November of 2002 did not show any liens in favor of Martin Marietta and against Neosho Construction, Inc.
The case of United Rentals Highway Technologies, Inc. v. St. Paul Surety, 37,265 (La.App.2d Cir.8/20/03), 852 So.2d 1200, involved the same highway project at the center of this appeal. United Rentals had a subcontract with Neosho to provide guard rails and road work on the project. Neosho did not pay an invoice of *157 $68,366.68. After learning of Neosho's bankruptcy, DOTD filed the notice of default against Neosho that was recorded in the public records of DeSoto Parish on October 11, 2001. On October 5, 2001, United Rentals contacted DOTD's engineer who referred United Rentals to USF & G for collection of the invoice amount under Neosho's bond. Five days later, United Rentals sent a claim with an invoice and a sworn statement of amount due to USF & G. A duplicate claim was sent to DOTD on October 17, 2001. United Rentals filed its sworn statement of claim in the DeSoto Parish public records on December 1, 2002, which was more than 45 days past the date that DOTD recorded its notice of default against Neosho. United Rentals filed suit against USF & G in March of 2002. This court granted USF & G's supervisory writ after the trial court denied USF & G's motion for summary judgment.
United Rentals argued that the reason it did not file its statement of claim within the 45 days required by La. R.S. 48:256.5(B) was because USF & G and DOTD committed fraud in failing to advise it that DOTD had already filed a notice of default. This court rejected that argument, noting that under the public records doctrine, United Rentals was charged with knowledge of DOTD's filing of the notice of default against Neosho. This court held that because United Rentals had failed to preserve its statutory privilege by timely recording its sworn statement of claim in DeSoto Parish, its right of action to proceed under the Public Works Act was extinguished.
It is of no moment that in the present case USF & G acknowledged receiving a copy of the lien on September 7 in an October 15, 2001, letter to Neosho, or that Murphy admitted in his deposition to receiving a copy of the lien and having been instructed to do nothing with any lien notices that he received. In United Rentals, both USF & G and DOTD had notice, prior to United Rentals filing its statement of claim, that Neosho had failed to pay an invoice for goods and services provided on the project. The DOTD engineer had even directed United Rentals to USF & G to collect the amount due. Nevertheless, despite this notice, this court still held that United Rentals lost its right of action because it had not complied with La. R.S. 48:256.5(B).
Martin Marietta cites four cases in support of its argument that technical errors regarding the statutory requirements are not sufficient to bar a claim when the contractor and surety have received timely notice of the claim. These cases are Gilchrist Const. Co., Inc. v. Terral Riverservice, Inc., XXXX-XXXX (La.App. 3d Cir.5/1/02), 819 So.2d 362, writ denied, 2002-2121 (La.11/8/02), 828 So.2d 1119; Bob McGaughey Lumber Sales, Inc. v. Lemoine Co., Inc., 590 So.2d 664 (La.App. 3rd Cir.1991); "K" Const., Inc. v. Burko Const., Inc., 629 So.2d 1370 (La.App. 4th Cir.1993), writ denied, 94-0149 (La.3/11/94), 634 So.2d 391; and Cole's Const. Co., Inc. v. Knotts, 619 So.2d 876 (La.App. 3rd Cir.1993). Each is readily distinguishable from the case now before this court.
Gilchrist dealt with a provision in La. R.S. 48:256.12 that required a claimant that had a direct contractual relationship with a subcontractor, but not with the contractor, to give written notice by registered or certified mail to the subcontractor and surety, in addition to complying with the notice and recordation requirements of La. R.S. 48:256.5(B). The claimant in Gilchrist had properly complied with La. R.S. 48:256.5(B). The Gilchrist court held that although letters pertaining to the claim had not been sent from the claimant to the *158 contractor using certified or registered mail as required, that defect did not defeat the claimant's claim.
In reaching this conclusion, the Gilchrist court relied on Bob McGaughey Lumber Sales v. Lemoine Co., Inc., supra. In McGaughey, the 3rd Circuit examined the certified mail requirement of La. R.S. 38:2247, which is similar to La. R.S. 48:256.12, and held that the rationale behind the certified mail requirement was to assure actual receipt of written notice of the claim and to facilitate proof of the claim.
Although the Third Circuit relaxed the method of notice requirement in each case, so that it was unnecessary for the claimant to use registered or certified mail, this particular requirement is not at issue in this case. Martin Marietta is not a claimant without a contractual relationship with the contractor, Neosho. Moreover, as noted by the McGaughey court, one of the purposes for the requirement of a certified mailing, as opposed to regular mail or hand delivery, is proof, and the certification itself does not provide any additional notice to the contractor.
In "K" Construction, Inc. v. Burko Construction, Inc., supra, the Fourth Circuit examined the provisions of a Public Works Act statute, La. R.S. 38:2242(B), which is similar to La. R.S. 48:256.5(B), with one significant difference being that La. R.S. 48:256.5(B) requires that the claimant "shall" file a sworn statement, whereas La. R.S. 38:2242(B) merely states the claimant "may" file a sworn statement. Before the public agency in Burko even placed the contractor in default and recorded a notice of default, several things occurred: the subcontractor filed a sworn affidavit of the balance due from the contractor in the mortgage records; the subcontractor filed suit against the contractor and sureties; and a surety bonded out the subcontractor's claim. A sub-subcontractor intervened in the suit, and filed a notice of lien six days after the notice of default was recorded.
The sureties in Burko argued that La. R.S. 38:2247 made the provisions of La. R.S. 38:2242(B) mandatory. The Burko court disagreed, noting that La. R.S. 38:2242 gave no consequence for not filing or recording a sworn statement, and that statute was not explained or limited by La. R.S. 38:2247. The court also noted that the particular facts of the case, namely the filing of suit and the bonding of the subcontractor's claim long before the recording of the notice of default, made the sureties' arguments irrelevant. The court remarked that the Public Works Act did not appear to "envision a situation where suit is filed before the notice of default is recorded." 629 So.2d at 1374. Besides dealing with a discretionary statute, Burko can be distinguished from the matter at hand based upon its unique facts as recognized by that court, particularly the action taken by a surety to release the subcontractor's claim and cancel it in the mortgage records before the recording of the notice of default.
In Cole's Construction Co., Inc. v. Knotts, supra, the court rejected the contractor's argument that a recorded statement of claim should be cancelled as not in compliance with La. R.S. 38:2242 because the claimant incorrectly listed his business as a corporation rather than as a sole proprietorship in the statement of claim filed in the mortgage records. The Knotts court regarded the nominal error as being inconsequential and insufficient to make the statement of claim invalid. In contrast, the naming error by Martin Marietta was much more damaging because it misnamed the party against whom the lien was made.
*159 Martin Marietta additionally argues that even if its concursus claim fails, it still has a viable claim against USF & G pursuant to La. R.S. 48:256.12. Martin Marietta asserts that the notice requirements of La. R.S. 48:256.3(A)(3) are not applicable to claims against a surety under La. R.S. 48:256.12. We disagree.
Compliance with the notice and recordation requirements of La. R.S. 48:256.5(B) is clearly demanded by La. R.S. 48:256.12: "Nothing in this Part shall be construed to deprive any claimant, as defined in this Part and who has complied with the notice and recordation requirements of R.S. 48:256.5(B), of his right of action on the bond furnished pursuant to this Part[.]" Emphasis added. La. R.S. 48:256.5(B) cannot be read independently of La. R.S. 48:256.3(A)(3), which mandates that a contract between DOTD and the contractor states the address for delivery of claims to DOTD which have been brought pursuant to La. R.S. 48:256.5(B). The contract between Neosho and DOTD contained the notice provision required by La. R.S. 48:256.3(A)(3). Because Martin Marietta did not comply with those requirements, it cannot maintain an action against USF & G under La. R.S. 48:256.12. We note that although Martin Marietta cites Burko, supra, in support of its argument, the Fourth Circuit stated in Burko that La. R.S. 38:2247 was "styled as a prescription article" and "does not actually create a cause of action on the bond." 629 So.2d at 1372.
Based upon our de novo review of this record, we conclude that DOTD and USF & G are entitled to summary judgment as a matter of law.
Bankruptcy Stay
Martin Marietta next argues that the 45-day period was not actually triggered because the notice of default violated the automatic stay of proceedings in the bankruptcy matter, and that the violation of the stay was void ab initio.[3] Martin Marietta cites 11 U.S.C. § 362, which states in relevant part:
(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of
* * * * *
(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
(4) any act to create, perfect, or enforce any lien against property of the estate[.]
* * * * *
An "entity" includes a "governmental unit." 11 U.S.C. § 101(15).
The stay created by § 362 is automatic, and it becomes effective upon the date of the filing of the bankruptcy petition. Gulfco Finance of Farmerville, Inc. v. McCormick, 577 So.2d 778 (La.App. 2d Cir.1991).
Regarding what comprises the property of the estate, 11 U.S.C. § 541 provides, in part:
(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised *160 of all the following property, wherever located and by whomever held:
(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.
Martin Marietta contends that the contract between Neosho and DOTD was property of the estate subject to the stay. However, Neosho motioned on November 9, 2001, to reject the executory contract with DOTD in its bankruptcy proceeding.[4] The bankruptcy court granted this motion on December 6, 2001. Therefore, because the notice of default did not affect property of the estate, it was not in violation of the automatic bankruptcy stay.

DECREE
At appellant's costs, the judgment is AFFIRMED.
NOTES
[1] La. R.S. 48:256.3 was enacted by Act 1112 of 1997.
[2] The Annual Report and Corporate Statement for DOTD at the end of the 2001 fiscal year stated the Undersecretary shall direct and be responsible for the functions of the Office of Management and Finance.
[3] "Actions taken in violation of the stay are void ab initio and are without effect, regardless of notice." Gulfco Finance of Farmerville, Inc. v. McCormick, 577 So.2d 778, 780 (La.App. 2d Cir.1991). However, in Joshua Inv. Corp. v. Home Sales Counseling, Inc., 39,251 (La.App. 2d Cir.1/19/05), 892 So.2d 151, writs denied, XXXX-XXXX (La.4/29/05), 901 So.2d 1066, and XXXX-XXXX (La.5/20/05), 902 So.2d 1051, this court stated that tax sales conducted in violation of a bankruptcy stay were merely voidable, not void ab initio.
[4] The minutes from the bankruptcy court list the party as being Railworks Corporation. The bankruptcy court had earlier ordered the joint administration of the Neosho Construction Company, Inc. and Railworks Corporation bankruptcies under the Railworks Corporation case number.