CRICHTON, Justice.
_JjThis case involves the interpretation of two provisions of the Public Works Act (“Act”), La. R.S. 38:2241, et seq. We granted.the writ application to determine whether, under La. R.S,, 38:2247, the notice and recordation requirements of La. R.S. 38:2242(B) are necessary conditions for a claimant’s right of action against a bond furnished pursuant -to La. R.S. 38:2241. Consistent, with the stated purpose .of the Act, we hold that the claimant’s failure to file a sworn statement with the public authority did not affect the right of the subcontractor, in contractual privity with the general contractor, to proceed directly against the contractor and its surety. We therefore reverse the decision of the court *300 of appeal and reinstate the decision of the trial court. , .

BACKGROUND

This matter arises out of a public works project for the construction of a gymnasium' in Terrytown, Louisiana. Pursuant to a contract between JaRoy Construction Inc. (“JaRoy” or “contractor”) and Jefferson Parish Council (“Jefferson Parish”), JaRoy was to serve as the general contractor, In compliance with La. R.S. 38:2241, et seq., the contractor furnished to Jefferson Parish a bond, on .which the Ohio Casualty Insurance Company (“Ohio Casualty”) was the surety.
JaRoy thereafter entered into a written subcontract with Pierce Foundations, Inc. (“Pierce”) to provide and install pilings on the project. On November 3, 2008, | gPierce completed the pile driving as called for in the contract. The contractor failed to pay to Pierce certain funds Pierce contended were due under the contract.[1]
In July 2009, Pierce filed a “Petition for Damages in Contract” against the contractor, and, in July 2010, amended the petition to add Ohio Casualty as a defendant. Pierce alleged that Ohio Casualty and the contractor were “jointly and severally liable” to Pierce for[1] the failure of thé- contractor ■ to perform under the contract. Ohio Casualty asserted several affirmative defensés to these allegations, one of which was that Pierce failed to comply with conditions precedent to 'filing a claim against the surety. When the ‘Contractor filed a petition for bankruptcy protection in December 2010," the lawsuit proceeded solely against'Ohio Casualty:"'
On October 17, 2011, when the project was substantially completed, the Jefferson Parish government filed a notice, of acceptance' of work with the Jefferson Parish mortgage records office. This occurred over a year after Pierce amended its lawsuit to add Ohio Casualty as a defendant. It is undisputed that Pierce never filed a sworn statement of claim in the mortgage records.
Before trial, Ohio Casualty filed a motion for summary judgment, contending that Pierce was required to comply with the notice and recordation requirements of La. R.S. 38:2242(B) and, because it failed to do so within 45 days of Jefferson Parish’s acceptance of the project, Pierce could not recover from Ohio Casualty under La. R.S, 38:2247. Pierce opposed the motion, asserting that the statute does not affect the right to proceed in contract, and the Act never contemplated a situation in which notice would be given and suit filed before the events outlined in R.S. 38:2242. Pierce contended that the Act does not contemplate any loss .of rights, other than the privilege against the public entity. The trial court granted Ohio Casualty’s motion' in part, “only’ to the extent that | ¡¡there is no privilege in favor of [Pierce],” and otherwise permitted the suit to proceed. Ohio Casualty sought supervisory reviéw, and the court of appeal denied relief,' stating:
On the showing made, we decline to exercise our supervisory jurisdiction. K Construction, Inc. v. Burko Construction, Inc., 629 So.2d 1370 (La.App. 4 Cir.1993); Wilkin v. Dev Con Builders, Inc., 561 So.2d 66 (La.1990).
Pierce Founds., Inc. v. The Ohio Casualty Ins. Co., 12-0859 (La.App. 5 Cir. 11/09/12) (unpublished).
On December 13, 2012, after a bench trial, the trial court rendered judgment in *301 favor of Pierce in the amounts ■ of $59,428.96 for sums owed under the contract and $57,000.00 for idle time, plus judicial interest from the date of the original judgment. As to Ohio Casualty’s, argument that Pieree’s exclusive right of action against it was limited to the relief granted by the Act and subject to compliance with its requirements, the trial court noted that it had “already rejected” this defense and stated that there was “no reason for this court to revisit that issue.” Following several motions for a new trial and amended judgments, the finhl judgment was signed on May 19, 2014.
Ohio Casualty suspensively appealed the judgment, contending that the trial court erred in failing to dismiss it prior to trial, because Pierce’s failure to comply with the notice provisions of La. R.S. 38:2242(B) resulted in forfeiture of its right of action against the surety. Pierce devolutively appealed, asserting the trial court erred by awarding interest only from the date of judgment. The Court of Appeal, Fifth Circuit, concluded that Pierce’s failure to comply with the relevant notice provisions deprived it of a right of action against Ohio Casualty, reversed the trial court judgment, and dismissed the suit as to Ohio Casualty. Pierce Founds., Inc. v. JaRoy Constr., Inc., 14-669 (La.App. 5. Cir. 3/25/15), 169 So.3d 580.
|4We then granted Pierce’s application for a writ of certiorari. Pierce Founds., Inc. v. JaRoy Constr., Inc., 15-0785 (La.6/5/15), 171 So.3d 938.

RELEVANT LAW

In 1918, the legislature enacted Act 224, the precursor to the modern Public Works Act, La. R.S. 38:2241, et seq., to “protect those performing labor and furnishing materials for public works.” Wilkin v. Dev Con Builders, Inc., 561 So.2d 66, 70 (La.1990). The laws do not grant beneficiaries a lien on the public work itself, but rather gives them “a privilege against the unex-pended fund in the possession of the public entity with whom the original contractwas entered irito.” Id. (quoting Pigeon-Thomas Iron Co. v. Drew Bros., 162 La. 836, 111 So. 182, 183 (1926)). As .this Court stated:
The effect of these provisions is to give certain classes of persons not enjoying privity of contract with the general contractor or with the.governing authority a claim nevertheless against the general contractor and his surety and in some instances a .claim against thq governing authority itself. t
Id. at 70. The laws also protect a public authority complying with the requirements of the statute from expenses caused by the failure of the contractor to perform the contract. 561 So.2d at 71. ;
The statutory framework set forth in the Act accomplishes this purpose, first/ 'by mandating that, when a public entity enters into a contract in excess of $25,000.00 for the construction, alteration, or repair of any public works, the contractor is required to post a bond “in a sum of not-less than fifty percent of the contract price for the payment by- the contractor or subcontractor to claimants • as ■ .defined in . R.S. 38:2242.” • La. R.S. 38:2241(A)(2). - .The law further establishes a means for asserting a claim under the Act, set forth in La. R.S. 38:2242(B): .<■
Any claimant[2] may after the maturity of his claim and within forty-five days after the recordation ■ of acceptance of the work by the | ^governing authority or- of *302 notice of . default of the contractor or subcontractor, file a sworn statement of the amount due him with the governing authority having the work done and record it in the office of the recorder of mortgages for the parish in which the work is done,
'The Act also addresses a claimant’s direct right of action on the bond against the general contractor and/or surety, making clear that the' subcontractor maintains a separate right of action outside of the parameters of the Act. To that end, La. R.S. 38:2247 provides, in pertinent part:
Nothing in this Part shall be construed to deprive any claimant, as defined in this Part and who has complied with the notice and recordation requirements of R.S. 38:2242(B), of his right of action on the bond furnished pursuant to this Part, provided that said action must be • brought against the surety or the contractor or-both within one year from the registry of acceptance of the work or of notice of default of the contractor except that before any claimant having a direct contractual relationship with a subcontractor but no contractual relationship with the contractor shall have a right of action against the contractor or the surety on the bond furnished by the contractor, he shall in addition to the notice and recordation required in R.S. 38:2242(B) give written notice to said contractor within forty-five days from the recordation of the notice of acceptance by the owner of the work or notice by the owner of default, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor or service was done or performed.
The court of appeal, construing La. R.S. 38:2247, held that “only those claimants who have complied with the notice and recordation requirements of La. R.S. 38:2242(B) shall not be deprived of a right of action on the bond.” Pierce Founds., Inc. v. JaRoy Constr., Inc., 14-669, p. 7 (La.App. 5 Cir. 3/25/16), 169 So.3d 580, 585 (emphasis added). The court of appeal therefore concluded: “[T]he notice and re-cordation requirements of La. R.S. 38:2242(B) are necessary conditions for a right of action on a bond. The failure to comply with these requirements deprives a claimant of a right of action on a bond.” Id. (emphasis added). The court of appeal also rejected the reasoning of the case “K” Construction, Inc. v. Burko Construction, Inc., 629 So.2d 1370 (La.App. 4 Cir. 1993), which it had previously cited in denying the relief that Ohio Casualty sought pre-trial.
Ohio Casualty urges this Court to affirm the court of appeal, arguing that Pierce’s failure to file the sworn statement of claim is fatal to its cause of action against Ohio Casualty. Ohio Casualty argues that exclusive rights of action against the surety are set forth in La. R.S. 38:2247, • and Pierce’s failure to comply with the requirements of the Act — including the notice and recordation requirements of La. R.S. 38:2242(B) — bar recovery against Ohio .Casualty.
Pierce argues that the court of appeal decision frustrates the purpose of the Act — specifically, that the Act was adopted to protect those performing labor and furnishing materials for public works, as set forth in Wilkin, not to immunize sureties from lawsuits brought in contract related to unpaid funds. Pierce contends, inter alia, that the court of appeal erred by converting the permissive “may” of La. R.S. 38:2242(B) into a mandatory requirement, thereby holding that a claimant who does not file the sworn statement is “deprived of all rights against the surety”— including rights in contract. Additionally, *303 because Pierce filed suit over a year before Jefferson Parish filed the notice of acceptance, Ohio Casualty could not reasonably claim it did not have notice of the claim. For the reasons set forth below, we agree with Pierce.

ANALYSIS

 Legislation is the solemn expression of the legislative will; thus, the interpretation of legislation is primarily the search for the legislative intent. Cat’s Meow, Inc. v. City of New Orleans, 98-0601, p. 15 (La.10/20/98), 720 So.2d 1186, 1198; La. Safety Ass’n of Timbermen Self-Insurers Fund v. La. Ins. Guar. Ass’n, 09-0023, p. 8 (La.6/26/09), 17 So.3d 350, 355-r56. See also La. R.S. 24:177(B)(1). When a law is clear and unambiguous, and its application does not lead to absurd consequences, it shall be applied as written, with no further interpretation made in [ 7search of the legislative intent. La. R.S. 1:4. The starting point for interpretation of any statute is the language of the statute itself. See, e.g., Cat’s Meow, 98-0601, p. 15, 720 So.2d at 1198; Timbermen, 09-0023, p. 8, 17 So.3d at 356. Additionally, “all laws pertaining to the same subject matter must be interpreted in pari materia, or in reference to each other.” See, e.g., State v. Williams, 10-1514 (La.3/15/11), 60 So.3d 1189, 1191; La. C.C. art. 13. • When, on the other hand, a statute is not clear and unambiguous, or its application leads to absurd consequences, we rely on secondary rules of statutory interpretation to discern the meaning of the statute at issue. See Red Stick Studio Dev., L.L.C. v. State ex rel. Dep’t of Econ. Dev., 10-0193, p. 10 (La.1/19/11), 56 So.3d 181, 187-88 (quotation omitted). In such cases, the statute “must be interpreted as having the meaning that best conforms to the purpose of the law. .Moreover, when the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole.” Id.
Because this -matter involves the interpretation- of statutory provisions and only questions-of law are presented, review by this court is de novo. See, e.g., Red Stick Studio, 56 So.3d at 187. Additionally, because the case involves the Public Works Act, it must be strictly construed. Wilkin, 561 So.2d at 75.
The court of appeal found that Ohio Casualty was entitled to summary judgment before trial, because Pierce did not comply" with the notice and recordation requirements of La. R.S. 38:2242(B). In so' holding, the court of appeal construed La. R.S. 38:2247 as imposing an affirmative requirement: “[Ojnly those claimants who have complied with the notice and recordation requirements of La. R.S. 38:2242(B) shall not be deprived of a right of action on the bond.” 14-669, p. 7, 169 So.3d at 584. Accordingly, the court of appeal concluded: “Logic .., dictates that the notice and recordation requirements of La. R.S. 38:2242(B) are necessary conditions for a right of action on a bond.” Id. In other words, the court |sof appeal found that R.S. 38:2247’s reference to’ the “requirements” of 2242(B)'causes the formalities to become mandatory in any action against the bond.[3]'
*304 ■ We disagree with this holding, and find that where the subcontractor fails to comply with ■ the notice and recordation requirements of La. R.S. 38:2242(B), the subcontractor loses his privilege against funds in the hands of the public authority, but the failure to comply does not affect the right of the subcontractor, in contractual privity with the general contractor, to proceed directly against the contractor and its surety. As an initial matter, we point out that the plain language of La. R.S. 38:2242(B). and La. R.S. 38:2247 conflict, because R.S.- 38:2242(B) provides that a claimant “may” file a sworn statement, but R.S. 38:2247 refers to the recordation “requirements” of 2242(B). Because of this ambiguity, we pursue the statutory- meaning in the context of the statute as a whole, with particular focus on the statute’s purpose.
The fundamental error in the court of appeal’s analysis is that it renders the permissive “may”-in La. R.S. 38:2242(B)— “[a]ny claimant may .... file a sworn statement” — mandatory ' in La. R.S. 38:2247. But the revised statutes instruct: “The word ‘shall’ is mandatory and the word ‘may’ is permissive.” La. R.S. 1:3. The court of appeal’s interpretation of the language of La. R.S. 38:2247 as mandatory, even where preexisting contractual.rights exist, is inconsistent with the “cardinal rule of statutory interpretation that the .word ‘may’ is permissive.” Kelly v. State Farm Fire & Cas. Co., 14-1921, p. 12 (La.5/5/15), 169 So.3d 328, 336.
. Instead of employing this interpretive principle, the court of appeal references the legislative history of La. R.S. 38:2247 to support its holding. Before 1985, La. R.S. 38:2247 provided, in pertinent part: “Nothing in this Part shall be | ¡¡construed to deprive any person or' claimant ... of his right of action on the contractor’s bond ' 14-669, p. 8, 169 So.3d at 585. Then, in 1985 La. Acts 244, § 1, the legislature amended ■ the provision to state: “Nothing in this Part shall be construed to deprive any claimant ... who has complied with the notice and recordation requirements of R.S. 38:2242(B), of his right of action on the bond-” Id. (emphasis added). The court of appeal opinion- implies that--the amendment was intended to overrule Honeywell, Inc. v. Jimmie B. Guinn, Inc., 462 So.2d 145, 148 (La.1985), in which- this Court commented (in dicta) that “an unpaid subcontractor having a direct' contractual relationship with the contractor may sue on the contractor’s bond without filing and recording a sworn claim or giving written notice to the contractor.” Honeywell, 462 So.2d at 148.
However, an examination of 1985 La. Acts 244, § 1 does not support the court of appeal’s assumption that the legislature intended to modify or otherwise limit La. R.S. 38:2242 in amending La. R.S. 38:2247. First, Honeywell stands only for the proposition that La. R.S'. 38:2247 contains a prescriptive period governing the claims of subcontractors, as well as those of materi-almen or laborers. 462 So.2d at 148. Second, the amendment of La. R.S. 38:2247 was not the only change caused by 1985 La. Acts 244, § -1. The .Act also revised La. R.S. 38:2241, 38:2242, 38:2244, and 38:2247, but,, despite these changes, the legislature did -not alter the. use ;of .the permissive “may” in La. R.S. 38:2242(B). If the legislature had intended La. R.S. 38:2247 to have the effect ascribed to it by the court of appeal, it would have altered the permissive, “may” in La. ■ R.S. 38:2242 to the mandatory “shall.” Compare, e.g., La. R.S. 48:256.5(B) (“Public Contracts of the Department of Transportation and Development,” providing: “Any claimant shall, after the.) inmaturity of his claim and within forty-five days after the recordation *305 of final acceptance of .the work by' the [governing authority] ....”) (emphasis added).[4]
Further, the court of appeal’s interpret-tation of La. R.S. 38:2247 to essentially trump the permissive language in La. R.S. 38:2242(B) overlooks that La. R.S. 38:2247 is first and foremost a prescription provision, providing an additional year to parties filing suit after the acceptance of work or default notice is filed,[5] In this case, Pierce filed suit over a year before’the acceptance was filed, the parties litigated the claims through discovery and motions, and Ohio Casualty was no doubt on notice of Pierce’s suit. Requiring additional notice under these unique circumstances is futile and merely duplicative.
We acknowledge that La. R.S. 38:2242 and La. R.S. 38:2247 use confusing — even conflicting — language. But favoring the permissive (“may”) language of La. R.S. 38:2242 rather than the restrictive ’ (“requirements”) language of La. R.S., 38:2247, as we do, here, best comports with the purpose of the act, which is to “protect those performing, labor and furnishing materials for public works” rather than protecting the sureties on the bond. Wilkin, 561 So.2d at 70. In other words, the Act creates an additional remedy to persons contributing to the construction, alteration, or repair of public works — a “privilege against the unexpended fund in the possession of the authorities with whom the original contract ha[d] been entered into.” Id. The Act is not intended • to — and does not — affect rights |ubetween parties pro-ceéding directly in contract and is, in fact, silent on the question of parties that are in contract and, as here, file suit well before the notice of acceptance or default is filed. See, e.g., James S. Holliday, et al, 'La. Prac. Series:[1] La. Constr. Law, § 13:14 (2015 ed.)[1] (“[Claimants have a[1] direct right of action against the contractor and the surety on the bond. ' This action can be filed any time after maturity of the claim, rather than requiring that the claimants wait for forty-five days after acceptance of the entire project, which in many cases could occur long after the claim matures.”). See also, e.g., La. C.C. art. 3045 (“A surety ... is liable to the creditor .... for the full performance of the obligation of the principal obligor, ... even in the absence of an express agreement of solidarity.”); Id. cmt. .(c) (“The creditor may include .in the same, suit both the principal obligor and the, surety, or lie may sue the surety without, joinder of the principal obligor.”). The court of appeal’s holding has the effect of foreclosing the exercise of preexisting contractual rights, which exist outside the pa--rameters of the Act and are expressly preserved in the Act, between a subcon *306 tractor and the general' contractor’s surety.[6]
A court' of appeal case, “K” Construction, Inc. v. Burko Construction, Inc., 93-1338 (La.App. 4 Cir. 12/16/93), 629 So.2d 1370, authored by former Chief Justice John Dixon sitting pro tempore, is instructive in its analysis of the relationship between La. R.S. 38:2242(B) .and 38:2247 (post-1985 amendment). .. In Burko — a case, like this one, in which the claimant filed a lawsuit before the public |12body filed its notice of acceptance or default— the court considered and rejected the same arguments made by the surety (and adopted by the court of appeal) in this case. The court noted that, the case was unique, because the notice of default was filed long after the plaintiffs had sent notice of nonpayment to the general contractor and after the plaintiffs filed the lawsuit. In reasoning we find compelling, Chief Justice Dixon wrote:
[The sureties] claim that althoúgh R.S. 38:2242 B says “may” instead of “shall,” R.S. 38:2247’s reference to the formalities of notice/filing and recordation as “requirements” causes the formalities to become mandatory. The sureties contend that the formalities are discretionary in R.S. 38:2242 B because that provision deals- with perfecting a statutory claim against - the prime contract funds in the hands of the public owner. R.S. ,38:2247, they believe, is a separate provision for- filing suit against the sureties in which the permissive provisions of R.S. 38:2242 B become mandatory.
The sureties also claim that the “may” in R.S. 38:2242 simply means that a claimant has the option to: 1) file and record a sworn statement to “perfect” his statutory claim, or 2) not file and -record a sworn statement and not have a “perfected” statutory claim. R.S. 38:2247, the sureties assert, is -what creates a causé of action against the bond and it requires a perfected claim to proceed against the bond.
The statutes do not, however, operate together as the sureties suggest. R.S. 38:2242 gives no consequence of not filing and/or recording the -sworn statement. And, styled as a prescription article, R.S. 38:2247 does not actually create a cause of action on the bond. The assumption that the legislature intended to explain or limit R.S. 38:2242 in R.S. 38:2247 is not warranted.
Burko, 629 So.2d at 1372.
We agree with the Burko court that any other interpretation of La. R.S. 38:2242 and 38:2247 would undermine the stated purpose of the Act: to protect those contributing to the construction, alteration, or repair of public works, not to foreclose *307 preexisting contractual rights between parties. Here, as in Burko, Pierce filed suit against, the surety long before the event occurred that triggers the 45-day period during which a claimant may file and record his sworn statement under La. R.S. 38:2242, as well as the prescriptive period of one year during which suit may be filed in accordance with La. R.S. 38:2247. As noted by Chief Justice Dixón in h ¡¡Burko, the provisions of the Act simply do not address the situation where.suit is filed prior to these triggering events. Id. at 1374 (“Simply put, the Public Works Act does not appear to envision a situation where suit is filed before the notice of default [or acceptance of the wórk by the governing authority] is recorded.”).[7]'
Because the statutory language at issue is ambiguous, and because the purpose of the Act is to assist laborers in recovery— not to immunize sureties where parties may proceed in contract — the purpose of the Act is effectuated by this decision.

DECREE

Pursuant to the foregoing, we hold that Pierce’s lawsuit was timely filed against the general contractor and its surety, Ohio Casualty, and that the failure of the plaintiff to perfect its privilege against the public authority (as found by the trial court) does not defeat its right of action against the surety. The decision of the court of appeal is reversed and the decision of the trial court is reinstated.
REVERSED.

. Pierce "alleged that the contractual báse price was $359,987.00, to which was added $11,500,00 for .a 'test pile program and $60,512.00 for standby/delay tíme, totaling .$431,999.00. The balance due, according to Pierce, is $116,716.96.

. La. R.S. 38:2242(A) defines "claimant” as "any person to whom money is due pursuant to the contract with the owner or a contractor or subcontractor for doing work, performing labor, or furnishing materials or supplies for the construction ... of any public works....” No party disputes that Pierce would qualify as a "claimant” under this definition.

. The dissent authored by Justice Hughes, which concludes that the only avenue ■ for asserting a claim against the surety for-work performed pursuant to the Act is by means of the process set forth in the Act (including the concursus proceeding), would effect a sweeping change'in the application of the'Act. In effect, Justice Hughes reads out of the Act the direct right of action against the bond that is expressly recognized and preserved in La. R.S. 38:2247. Such a holding is not supported by the language or intent of the Act.

, Though the court of appeal presumes that the amendment of La. R.S. 38:2247 was intended to overrule Honeywell, .it is just as likely that the revisions were intended to overrule the decisions in Construction Materials, Inc. v. Am. Fidelity Fire Ins. Co., 388 So.2d 365 (La.1980), and Valliant v. State, Dept. of Transp. and Development, 437 So.2d 845 (La.1983), which ruled that sureties could contractually extend their liability for claims falling outside the ambit of the public works statutes, and to make it clear,that the bond furnished pursuant to the Act is a statutory one. Thus, Under the 1985 amendments, sureties are “immune” from claims of those who do not qualify as "claimants” under the Act. See La. Prac. Series: La. Constr. -Law § 13:10.

. Though we respectfully disagree with the dissent authored by Justice Knoll,' which adopts á similar analysis to the court of appeal, we emphasize that the statutory provisions are complicated and, unfortunately, less than clear. Given the divergence in analysis by the courts, below and even the justices on this court, we believe that this is a matter ripe for review by the Louisiana Law Institute and the legislature.

, We note further that R.S.* 38:2241(0 contains language that purports to “immunize” sureties from liability for or payment of claims "not required by this Part.” La. R.S. 38:2241(0 ("Sureties and contractors executing payment bonds for public works contracts under this Part shall be immune from liability for or payment of any claims not required by this Part.”). It has been suggested that the aim of this provision is to "clearly state[ ] that a bond given pursuant to the Public Works Act is a statutory bond which is strictly construed and that only claimants who are specifically named in the statutes have a right to sue under the bond.” La, Prac. Series: La. Constr. Law, § 13:10. Though this language is less than clear, there is no indication that it was'intended to supplant'-contractual remedies that persons who qualify as "claimants” under the Act otherwise possess. This is consistent with the federal Miller Act, 49 U.S.C. § 3131, et seq. (related to federal public construction projects), which requires no special notice .for claimants directly in contract with the general contractor. See La. Prac. Series: La. Constr, Law § 13:15 (noting that a subcontractor in a direct contractual relationship with a contractor is not required to give no-tiqe under the Miller Act before filing suit).

. The other cases relied upon by the court of appeal are inapposite under the unique facts presented in this case, because the claimants in those cases (i) did not file á lawsuit before the notice of acceptance of work was filed, and (ii) filed their lien in the record after the expiration of the 45 day period. See, e.g., Gulf Coast Refrigeration, LLC v. Houma Terrebonne Hous. Auth., 13-1512 (La.App. 1 Cir. 3/24/14), 2014 WL 1175898, at *7 (unpublished), writ denied, 14-0855 (La.6/20/14), 141 So.3d 811 (lien filed and recorded more than 45 days after default and did not file lawsuit until, months later); John F. Sanchez Plumbing Co. v. Aetna Cas. & Surety Co., 564 So.2d 1302, 1303 (La.App. 1 Cir.1990), writ denied, 567 So.2d 1128 (La.1990) (lien filed more than 45 days after notice of acceptance of work-and lawsuit filed approximately three months later); Interstate Sch. Supply Co. v. Guitreau's Constr. & Consulting Co., 542 So.2d 138, 139 (La.App. 1 Cir.1989) (sworn statement filed 46 days after recordation of the notice of acceptance).

. I do agree' the Public Works Act does not prevent or prohibit a subcontractor’s right of action against a general contractor with which the subcontractor shares contractual privity, but this issue is not presently before this Court/