| SOUTHERN ENVIRONMENTAL MANAGEMENT AND SPECIALTIES, INC. | * | NO. 2022-CA-0018 |
|---|---|---|
| | * | COURT OF APPEAL |
| VERSUS | * | FOURTH CIRCUIT |
| CITY OF NEW ORLEANS AND HONORABLE LATOYA CANTRELL, IN HER OFFICIAL CAPACITY AS THE MAYOR OF THE CITY OF NEW ORLEANS AND COMMAND CONSTRUCTION INDUSTRIES, LLC AND ARCH SPECIALTY INSURANCE, INC. | * | STATE OF LOUISIANA |
| | * * * * * * * | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2020-02242, DIVISION "E"
Honorable Omar Mason, Judge
* * * * * *
**Judge Rosemary Ledet**
* * * * * *

(Court composed of Chief Judge Terri F. Love, Judge Rosemary Ledet, Pro Tempore Judge Madeline Jasmine)

Jonathan S. Forester
Christopher K. LeMieux
Evian Mugrabi
RIESS LeMIEUX, LLC
1100 Poydras Street, Ste. 1100
New Orleans, LA 70163

      COUNSEL FOR PLAINTIFF/APPELLANT

Craig N. Mangum
Elliott Scharfenberg
Audrey E. Martin
KREBS FARLEY & DRY, PLLC
400 Poydras Street, Suite 2500
New Orleans, LA 70130

      COUNSEL FOR DEFENDANT/APPELLEE

           **AFFIRMED**
           **May 11, 2022**

This is a construction project, nonpayment dispute. The plaintiff—Southern Environmental Management and Specialties, Inc. ("SEMS")—was a subcontractor on a Louisiana Public Works Act ("LPWA") project—the Hagan-Lafitte Drainage Upgrades and Green Infrastructure Project (the "Project").[1] SEMS sued, among others, the Project's statutory surety—Arch Insurance Company ("Arch")—asserting two claims: a payment claim under the bond ("Payment Claim"); and an insurance bad faith penalties claim under La. R.S. 22:1892 and 22:1973 ("Penalties Claim"). On Arch's motion for partial summary judgment, the trial court dismissed SEMS's Penalties Claim.[2] SEMS appeals.

The sole question presented is a legal one: whether a surety that issues a statutory bond under the LPWA is immune from insurance bad faith penalties

---

[1] The LPWA—La. R.S. 38:2241, *et seq.*—governs public work contracts and requires that governing authorities entering into a construction contract for a public work furnish a statutory bond. It is undisputed that the Project falls within the ambit of a public work regulated by the LPWA.

[2] As discussed elsewhere in this opinion, the trial court, in a separate judgment, granted SEMS's summary judgment motion on SEMS's Payment Claim; the trial court's ruling on the Payment Claim is not before us on appeal.

under La. R.S. 22:1892 and 22:1973. Answering that question in the affirmative, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

This dispute originated from a public works project. The four parties involved in this dispute are as follows: (i) the City of New Orleans, as Project owner; (ii) Command Construction Industries, LLC ("Command"), as general contractor; (iii) SEMS, as subcontractor; and (iv) Arch, as surety.[3]

In October 2018, the City entered into a bid contract for the Project with Command—the lowest, responsible bidder. Command, in turn, subcontracted with SEMS to perform a portion of the work on the Project. In connection with the Project, Arch provided Command's required statutory bond with Command as principal, Arch as surety, and SEMS as obligee.[4] During the Project, Command asked SEMS to perform additional work on the Project.

Thereafter, a dispute arose over the timing and propriety of the amount owed by Command to SEMS for work on the Project. When SEMS invoiced Command for the work, Command paid a portion of the invoiced amount but disputed the remaining balance that SEMS claimed was due. Seeking to recover the remaining balance, SEMS took three steps. First, in November 2019, SEMS notified Arch that it was making a payment claim under the bond for the remaining balance claimed due.[5] Second, in March 2020, SEMS recorded a statement of claim (a lien)

---

[3] Although all four of these parties are named in the underlying lawsuit, this appeal involves only SEMS, as appellant, and Arch, as appellee.

[4] The bond obligated Arch to pay all sums due and owed to subcontractors for the Project.

[5] In November 2019, SEMS submitted a claim under the payment bond for its claims for extra-contractual quantity and unit price increases to its scope of work.

with the Orleans Parish Recorder of Mortgages. Third, also in March 2020, SEMS sued, among others, Arch asserting the Payment Claim and the Penalties Claim.

SEMS filed a motion for summary judgment, seeking a judgment against Arch on both the Payment Claim and the Penalties Claim. Arch, in response, opposed the motion, in general, and filed a cross motion for partial summary judgment as to the Penalties Claim, in particular. Triggered by a consent agreement between the parties, the trial court bifurcated the summary judgment hearing and separately heard and decided the Payment Claim and the Penalties Claim.

In July 2021, the trial court held a hearing on the Payment Claim. At that hearing, the trial court orally granted SEMS's motion, ruling in SEMS's favor and against Arch as to the Payment Claim.[6] The following month, in August 2021, the trial court held a hearing on the parties' cross summary judgment motions on the Penalties Claim. Following the hearing, the trial court, in October 2021, rendered a written judgment granting Arch's motion and denying SEMS's motion.

In its October 2021 judgment, the trial court stated that, pursuant to the LPWA (La. R.S. 38:2241, *et seq*.), SEMS has no claims as a matter of law for relief under the Insurance Code; thus, the trial court dismissed with prejudice SEMS's claims against Arch under La. R.S. 22:1982 and 22:1973—the Penalties Claim.[7] This appeal by SEMS followed.

---

[6] As discussed elsewhere in this opinion, the trial court, on this court's order, supplemented the record on appeal with a signed, written judgment granting SEMS's summary judgment on the Payment Claim. In that judgment, the trial court ordered that "ARCH shall pay SEMS its contract balance, including retainage, and payment for extra work under the contract between [Command] and SEMS in the total amount of $219,730.45, as bifurcated and prayed for, for the reasons provided in open court."

[7] The trial court also denied SEMS's summary judgment motion as to its Penalties Claim. In so doing, the trial court held that SEMS has no claim, as a matter of law, for relief under the Insurance Code against Arch. Citing La. C.C.P. art. 966(A)(3), the trial court further held that material disputed facts exist and SEMS's summary judgment motion for bad faith claims under

**DISCUSSION**

*Standard of Review*

The same standard of review applies to an appellate court's review of a trial court's ruling on a summary judgment motion and a trial court's determination of a legal issue—the *de novo* standard. *See Elliott v. Cont'l Cas. Co.*, 06-1505, p. 10 (La. 2/22/07), 949 So.2d 1247, 1253 (observing that "appellate courts review summary judgments *de novo* under the same criteria that govern the district court's consideration of whether summary judgment is appropriate";[8] *Pierce Foundations, Inc. v. Jaroy Const., Inc.*, 15-0785, p. 7 (La. 5/3/16), 190 So.3d 298, 303 ("*Pierce*") (observing that "[b]ecause this matter involves the interpretation of statutory provisions and only questions of law are presented, review by this court is de novo"). Moreover, "because the case involves the [LPWA], it must be strictly construed." *Id*.

*Jurisdictional Issue*

An appellate court has a duty to decide, regardless if a party raises the issue, whether it has jurisdiction to consider the merits of an appeal. *See Urquhart v. Spencer*, 15-1354, p. 3 (La. App. 4 Cir. 12/1/16), 204 So.3d 1074, 1077 (quoting *Moon v. City of New Orleans*, 15-1092, 15-1093, p. 5 (La. App. 4 Cir. 3/16/16), 190 So.3d 422, 425). The trial court's October 2021 judgment, from which this appeal arises, is an "issue" or a "claim" summary judgment under La. C.C.P. art

---

the Insurance Code is denied. Given our ruling affirming the trial court's grant of Arch's partial summary judgment motion, we pretermit discussion of SEMS's cross motion.

[8] As this court has noted, the "procedural methodology and principles governing summary judgment review are well-settled." *Lomax v. Transdev Servs., Inc.*, 20-0620, p. 6 (La. App. 4 Cir. 10/20/21), 331 So.3d 368, 373, *writ denied*, 21-01737 (La. 2/8/22), 332 So.3d 668. Given the legal nature of the issue presented here, we find it unnecessary to repeat those principles here.

4

966(E).[9] Such a judgment, albeit a partial final judgment, is not final unless the certification requirements of La. C.C.P. art. 1915(B) are met.

Here, the trial court declared that this was a partial final judgment under La. C.C.P. art. 1915 and that there was no just reason for delay of an appeal. In support, the trial court declared that all remaining claims against Arch had been dismissed with prejudice. In a footnote, the trial court stated that "SEMS's claims against Arch under the payment bond were granted in open court [in July 2021]. This [October 2021] Judgment does not modify the [July 2021] order from the Court."

Although the trial court certified the October 2021 partial summary judgment as final pursuant to La. C.C.P. art. 1915(B), that designation is not determinative of this court's jurisdiction. Instead, when an order designating a judgment as final for appeal purposes is accompanied by explicit reasons, the reviewing court must determine whether the trial court abused its discretion in certifying the judgment. *R.J. Messinger, Inc. v. Rosenblum*, 04-1664, p. 13 (La. 3/2/05), 894 So.2d 1113, 1122.

Here, Arch contends in its appellee brief that the October 2021 judgment is not final given the absence from the record of a signed, written judgment reflecting the trial court's July 2021 oral ruling on the Payment Claim. To resolve the procedural problem created by the absence of a written judgment on the Payment Claim, this court, *sua sponte*, ordered the trial court to supplement the record with a signed, written judgment reflecting its July 2021 oral ruling. The trial court

---

[9] La. C.C.P. art 966(E) provides that "[a] summary judgment may be rendered dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the granting of the summary judgment does not dispose of the entire case as to that party or parties."

complied with the order. The trial court signed a judgment on the Payment Claim in April 2022; and the record was supplemented with that signed, written judgment.

Because all of SEMS's claims against Arch—the Payment Claim and the Penalties Claim—have been dismissed by written judgments, we find no abuse of discretion in the trial court's certification of the October 2021 judgment as a final, appealable judgment pursuant to La. C.C.P. art. 1915(B). *See Overmier v. Traylor*, 475 So.2d 1094, 1094-95 (La. 1985) (observing that "once the final judgment has been signed, any previously existing defect has been cured, and there is no useful purpose in dismissing the otherwise valid appeal").We, thus, turn to the substantive issue presented here.

*Substantive Issue*

Again, this appeal presents the narrow, legal issue of whether a surety that issues a statutory bond under the LPWA is immune from liability for insurance bad faith penalties under the Louisiana Insurance Code—La. R.S. 22:1892 and 22:1973 (the "Insurance Penalties Provisions"). SEMS contends that the Insurance Penalties Provisions apply to sureties under the LPWA given the general definitional provisions of the Louisiana Insurance Code,[10] coupled with the all-inclusive language in the Insurance Penalties Provisions. SEMS stresses Arch's counsel's admission that Arch is an insurer.

SEMS acknowledges, however, that this court resolved the same legal issue in a surety's favor in *Metro Builders Hardware, Inc. v. Burko Const., Inc.*, 93-1970

---

[10] *See* La. R.S. 22:46(10) (defining an insurer as "every person engaged in the business of making contracts of insurance, other than a fraternal benefit society"); La. R.S. 22:47(18) (classifying surety as insurance).

(La. App. 4 Cir. 2/25/94), 633 So.2d 838 ("*Metro*"). Nonetheless, SEMS contends that the Louisiana Supreme Court, in its subsequent decision in *Pierce*, implicitly overruled *Metro*.

Arch counters that *Metro* has not been overruled and is dispositive. Arch emphasizes that the Legislature has not revised the statutory provision this court cited in *Metro*—La. R.S. 38:2241(C)—that provides for immunity to a surety (the "Immunity Provision"). Arch further emphasizes, as this court also noted in *Metro*, that the LPWA has its own penal provision—La. R.S. 38:2246, which provides for attorney's fees.

To resolve the impact, if any, of *Pierce* on our precedent in *Metro*, we begin by summarizing the *Metro* and *Pierce* cases and then addressing the impact of *Pierce* on *Metro*. At the outset, we note that both *Metro* and *Pierce* arose out of public works projects governed by the LPWA. In both cases, the issue addressed was a purely legal one.

### *Metro*

The legal issue this court addressed in *Metro* was whether the Insurance Penalty Provisions—there, former La. R.S. 22:1220[11]—applied to a surety bond issued under the LPWA. The plaintiff, a material supplier, sued the general contractor and the statutory surety asserting a claim for the following three items: (i) the principal amount due for the materials; (ii) attorney's fees under the LPWA, La. R.S. 38:2246; and (iii) insurance bad faith penalties under the Louisiana Insurance Code, La. R.S. 22:1220. The trial court found the surety liable for the first two items, but denied the third one—the insurance bad faith penalties.

---

[11] After *Metro* was decided, the Louisiana Legislature renumbered the Insurance Penalty Provisions. The substance of the penalty provisions has not been changed.

On appeal, the material supplier made the same argument SEMS makes here—that the Insurance Penalties Provisions applied because a surety bond is an insurance contract and, thus, the surety's failure to pay under that contract resulted in insurance bad faith penalties. Rejecting that argument, this court reasoned that a surety under the LPWA could not be held liable for any claim not provided for in the LPWA. In so holding, this court cited the following five factors:

- The LPWA is *sui generis*; it is the exclusive remedy to parties in public construction work; and it must be strictly construed;

- The LPWA requires a bond be furnished by a public entity that contracts for the construction of public work in excess of a certain sum; that required bond is a statutory bond. La. R.S. 38:2241(A);

- The LPWA provides certain immunities to sureties—the Immunity Provision. La. R.S. 38:2241(C) (providing "[s]ureties and contractors executing payment bonds for public works contracts under this Part shall be immune from liability for or payment of any claims not required by this Part")';

- Although the LPWA contains an attorney's fees provision, it contains no penalty provision. *See* La. R.S. 38:224 (providing that attorney's fees are recoverable when payment is not made within thirty days after amicable demand on the principal or surety and the claimant recovers the full amount of the claim); and

- Louisiana courts have refused to allow recovery on a statutory bond beyond the LPWA's provisions.

Summarizing, this court observed that "[b]ecause the public contract and bond in this case are governed by the [LPWA], [the statutory surety] is not liable for any claim not provided for in the statute." *Metro,* 633 So.2d at 840.

### *Pierce*

In *Pierce*, the Supreme Court granted a subcontractor's writ application to interpret two LPWA provisions—La. R.S. 38:2247 and 38:2242(B). At the outset of its opinion, the Supreme Court observed that it "granted the writ application to

determine whether, under La. R.S. 38:2247, the notice and recordation

requirements of La. R.S. 38:2242(B) are necessary conditions for a claimant's right

of action against a bond furnished pursuant to La. R.S. 38:2241." *Pierce*, 15-0785,

p. 1, 190 So.3d at 299.[12]

In addressing the issue, the Supreme Court summarized the LPWA's history

and observed that under the LPWA, a claimant on a public works project has two

avenues of relief: (i) an action against the general contractor and surety on the

project's statutory bond ("Bond Action"); and (ii) in lieu of a lien, a privilege

against funds in the hands of the public authority with whom the original contract

was entered into ("Privilege Claim"). The Supreme Court held that the

subcontractor's failure to comply with the notice and recordation requirements of

---

[12] In *Pierce,* a general contractor entered into a contract with the Jefferson Parish Council ("Parish") to construct a gym. In compliance with La. R.S. 38:2241 A(2), the general contractor obtained a bond with a surety, Ohio Casualty Insurance Company ("Ohio Casualty"). The general contractor then entered into a subcontract with Pierce Foundation, Inc. ("Pierce") for the installation of pilings. After completing its work in November 2008, and upon the general contractor's failure to pay for the work, Pierce sued the general contractor in July 2009. A year later, Pierce added Ohio Casualty as a defendant. The general contractor then filed for bankruptcy; thereafter, the matter proceeded solely against Ohio Casualty. Almost a year later, Parish filed a notice of acceptance of the work in the mortgage records. Pierce failed to file a sworn statement of claim in the mortgage records.

Ohio Casualty filed a summary judgment motion contending that Pierce failed to preserve its rights to proceed against it, citing La. R.S. 38:2247. The trial court granted in part and dened in part Ohio Casualty's summary judgment motion; the trial court granted it solely to the extent that there was no privilege in Pierce's favor. The appellate court denied Ohio Casualty's writ application on the showing made, stating that "we decline to exercise our supervisory jurisdiction" and citing *K Construction, Inc. v. Burko Construction, Inc.*, 629 So.2d 1370 (La. App. 4th Cir. 1993)("*Burko*"), and *Wilkin v. Dev Con Builders Inc.,* 561 So.2d 66 (La. 1990). *Pierce Founds., Inc. v. The Ohio Casualty Ins. Co.*, 12-0859 (La. App. 5 Cir. 11/09/12) (unpublished). Following a bench trial, a judgment was rendered against Ohio Casualty.

On appeal, the appellate court, changing its position, reversed. Construing La. R.S. 38:2247, the appellate court held that "only those claimants who have complied with the notice and recordation requirements of La. R.S. 38:2242(B) shall not be deprived of a right of action on the bond." *Pierce Founds., Inc. v. JaRoy Constr., Inc.*, 14-669, p. 7 (La. App. 5 Cir. 3/25/15), 169 So.3d 580, 584. The appellate court held that the notice and recordation requirements set forth in La. R.S. 38:2242(B) are prerequisites for a right of action on the bond. The appellate court found that the subcontractor's (Pierce's) failure to comply with these prerequisites deprived it of a right of action on the bond. In so holding, the appellate court rejected the reasoning of the *Burko* case. The Supreme Court granted Ohio Casualty's writ to address this legal issue.

the LPWA deprived it of the Privilege Claim, but not the Bond Action. *Pierce*, 15-0785, p. 8, 190 So.3d at 304. In support of its holding, the Supreme Court cited two factors—the ambiguity of the statutory language in question and the purpose of the LPWA.

As to the ambiguity, the Supreme Court observed that the plain language of La. R.S. 38:2242(B)—which included the permissive language that a claimant "may"[13] file a sworn statement of claim—and the language of La. R.S. 38:2247— which included a reference to the recordation "requirements" of section 2242(B)— were in conflict. To resolve this ambiguity, the Supreme Court looked to the purpose of the statutory provision as a whole.

The LPWA's purpose, the Supreme Court noted, is "to 'protect those performing labor and furnishing materials for public works' rather than protecting the sureties on the bond." *Pierce*, 15-0785, p. 10, 190 So.3d at 305 (quoting *Wilkin*, 561 So.2d at 70). To achieve the purpose, the LPWA "creates an *additional* remedy to persons contributing to the construction, alteration, or repair of public works"—the Privilege Claim. *Pierce*, 15-0785, p. 10, 190 So.3d at 305 (emphasis in original). The LPWA, however, "is not intended to—and does not—affect rights between parties proceeding directly in contract"—the Bond Action. *Pierce*, 15-0785, pp. 10-11, 190 So.3d at 305.[14] Accordingly, the Supreme Court concluded

---

[13] The Supreme Court cited La. R.S. 1:3, which provides that "'[t]he word 'shall' is mandatory and the word 'may' is permissive." *Pierce*, 15-0785, p. 8, 190 So.3d at 304.

[14] Continuing, the Supreme Court observed that "La. R.S. 38:2247 is first and foremost a prescription provision, providing an additional year to parties filing suit *after* the acceptance of work or default notice is filed." *Pierce*, 15-0785, p. 10, 190 So.3d at 305. Emphasizing the unique circumstances presented in *Pierce*, the Supreme Court noted that the subcontractor had filed suit over a year before the acceptance was filed, the parties litigated the claims through discovery and motions, and the surety obviously was on notice of the suit. Based on the unique circumstances, the Supreme Court commented that "[r]equiring additional notice under these unique circumstances . . . would be futile and merely duplicative." *Id.*

that "[b]ecause the statutory language at issue is ambiguous, and because the purpose of the Act is to assist laborers in recovery—not to immunize sureties where parties may proceed in contract—the purpose of the Act is effectuated by this decision." *Pierce*, 15-0785, p. 13, 190 So.3d at 307.[15]

**Issue Presented in This Case**

The issue here is whether a surety that issues a statutory bond under the LPWA is immune from insurance bad faith penalties under La. R.S. 22:1892 and 22:1973. Citing La. R.S. 38:2241(C), the Immunity Provision, this court in *Metro* answered that question in the affirmative. As noted elsewhere in this opinion, SEMS argues that the Supreme Court in *Pierce* effectively overruled this court's decision in *Metro*. In support, SEMS cites the following three statements by the Supreme Court in *Pierce*:

- The LPWA "creates an *additional* remedy to persons contributing to the construction, alteration, or repair of public works"—the Privilege Claim. *Pierce*, 15-0785, p. 10, 190 So.3d at 304 (emphasis in original).

- "[T]he purpose of the Act is to assist laborers in recovery—not to immunize sureties where parties may proceed in contract." *Pierce*, 15-0785, p. 13, 190 So.3d at 307.

- "[A]ny other interpretation of La. R.S. 38:2242 and 38:2247 would undermine the stated purpose of the Act: to protect those contributing to the construction, alteration, or repair of public works, not to foreclose preexisting contractual rights between parties." *Pierce*, 15-0785, p. 12, 190 So.3d at 306-07.

---

[15] Buttressing it reasoning, the Supreme Court cited with approval this court's decision in *Burko*, authored by former Chief Justice John Dixon sitting *pro tempore*. The Supreme Court noted that *Burko* considered and rejected the same arguments made by the surety in *Pierce*. Agreeing with *Burko*, the Supreme Court observed that "any other interpretation of La. R.S. 38:2242 and 38:2247 would undermine the stated purpose of the Act: to protect those contributing to the construction, alteration, or repair of public works, not to foreclose preexisting contractual rights between parties." *Pierce*, 15-0785, p. 12, 190 So.3d at 306-07.

11

According to SEMS, *Pierce* stands for the proposition that the LPWA can be harmonized with other laws—including other statutory schemes, such as the Louisiana Insurance Code—and that it is not a subcontractor's exclusive remedy.

Arch counters that *Pierce*, in addressing the legal issue before it, never left the confines of the LPWA itself and, thus, is consistent with *Metro*. According to Arch, *Pierce* never harmonized the LPWA and other statutory schemes; rather, *Pierce* stands for the limited proposition that a subcontractor may pursue the Bond Action—a contract claim—against the general contractor and its statutory surety despite the lack of timely filing and recordation. Arch also emphasizes that the majority opinion in *Pierce* does not mention *Metro*. We agree.

Nothing in *Pierce* changes our holding in *Metro*. The Supreme Court in *Pierce* addressed an entirely different issue of statutory construction than the issue presented in *Metro*. The key statutory provision cited in *Metro* was La. R.S. 38:2241(C)—the Immunity Provision. Although the surety in *Pierce* raised the Immunity Provision as a defense to the subcontractor's claim against it, the majority in *Pierce* declined to address the Immunity Provision. As one of the dissenting justices in *Pierce*, former Justice Knoll, observed:

> Nowhere does the majority opinion address this key provision in the [L]PWA—the immunity granted the surety under La. R.S. 38:2241(C)—, which renders the majority's analysis clearly erroneous. A proper statutory analysis would address the immunity provision, which the surety . . . is urging in this case. The immunity provision clearly grants [the surety] immunity because [the subcontractor] did not follow the notice and recordation requirements before (or even after) it filed suit against [the surety]."

*Pierce*, 15-0785, p. 6, 190 So.3d at 310 (Knoll, J., dissenting). In an apparent response to the dissent, the majority in *Pierce* inserted a footnote in its opinion, stating that the Immunity Provision was not intended to supplant contractual

remedies a LPWA claimant otherwise possesses. *Pierce*, 15-0785, p. 11, n. 6, 190 So.3d at 306.[16]

Given the failure of the majority opinion in *Pierce* to construe the Immunity Provision coupled with its focus on two entirely different LPWA statutory provisions, we find SEMS's contention that *Pierce* effectively overruled *Metro* unpersuasive.[17] As Arch emphasizes, the Legislature has not amended the Immunity Provision since *Metro* was decided. Again, the Immunity Provision expressly provides that "[s]ureties . . . executing payment bonds for public works contracts under this Part shall be immune from liability for or payment of any claims not required by this Part." La. R.S. 38:2241(C).[18] The Immunity Provision cabins a surety's liability to the parameters of the LPWA. Given the Insurance Penalties Provisions are located outside the LPWA—in the Louisiana Insurance Code—the Insurance Penalties Provisions, as we held in *Metro,* are not applicable to the statutory surety, Arch. Accordingly, we find no error in the trial court's grant of Arch's motion for partial summary judgment on the Penalties Claim.

## DECREE

---

[16] The footnote reads as follows:

> We note further that R.S. 38:2241(C) contains language that purports to 'immunize' sureties from liability for or payment of claims 'not required by this Part.' La. R.S. 38:2241(C) . . . It has been suggested that the aim of this provision is to 'clearly state[ ] that a bond given pursuant to the Public Works Act is a statutory bond which is strictly construed and that only claimants who are specifically named in the statutes have a right to sue under the bond.' LA. PRAC. SERIES: LA. CONSTR. LAW, § 13:10. Though this language is less than clear, there is no indication that it was intended to supplant contractual remedies that persons who qualify as 'claimants' under the Act otherwise possess.

*Pierce*, 15-0785, p. 11, n. 6, 190 So.3d at 306.

[17] Our holding that *Pierce* did not effectively overrule *Metro* is buttressed by the fact that *Burko*, which the majority in *Pierce* adopts as supporting its holding, was decided by this court in 1993, a year before *Metro* was decided.

[18] *See* La. R.S. 1:3 (providing that "[t]he word 'shall' is mandatory").

For the foregoing reasons, the judgment of the trial court is affirmed.

**AFFIRMED**